The opinion of the Court was delivered by
Rogers, J.
This was an action of ejectment to recover 135 perches of land. On the trial of the cause, by consent of parties a verdict was taken for the plaintiffs, subject to the opinion of the Court upon the whole case.
*424 The defendants contend—
1. That no estate passed to the plaintiffs, which will entitle them to recover in this action.
2. That if any estate passed, the plaintiffs have lost their right to recover.
■ 3. That the defendants may rescind the contract.
4. That for part of the land, Fox and Price, two of the defendants, are bona fide purchasers, without notice.
By the second section of the act of the 29th September, 1791, the Company have the power of purchasing, taking and holding, to them, their successors or assigns, in fee simple, or for a lesser estate, all such lands, tenements, and hereditaments, as shall be necessary for the prosecution of their work. There is a like provision in the act of the 10th April, 1796. In the 6th section of the first act, it is provided, “ That it may be lawful for the President and Managers, to contract and agree' with the owners of the lands and tenements, for the purchase of so much thereof as shall be necessary for the purpose of making, digging, and perfecting the canal, and of erecting and establishing, all the necessary locks, works and devices,” &c. if they can agree with such owners ; but in case of disagreement, &c., the act provides for the issuing a writ of ad-quod damnum, to assess the damages done to the owners of such lands and tenements, andón the return of the inquest directs the Court to give judgment, and declares, that the Company shall be entitled to have and to hold, to them and their successors and assigns forever, all and every the lands and tenements, &c. in the said inquisition described, as fully and effectually as if the same had been granted to them by the respective owners thereof.
It is immaterial in this controversy, whether the contract of sale between Mr. Young and the Company was, entered into on the 1st of April, 1792, or at a later period. The effect on the title is precisely the same. I must, however, be permitted to observe, that the evidence shows, roost clearly, a parol contract of the 1st of April, 1792, of which a memorandum, in writing, was made in the hand writing of William Young, some time in 1798. The contract was executed by the entry of the Company on the land, excavating it, preparing it for the uses and purposes of a canal, and by payments of the purchase-money. The resolution of the 3d May, 1796, shows that the contract was made at or about that period of time. Be this as it may, the contract was made under the authority of the acts cited, and was followed by the Company taking possession, as before stated. The defendants contend, that under this contract the plaintiffs acquired an easement or right of way only, and that for an injury to such an interest, ejectment will not lie; and it is true, if it be an easement, ejectment is not the proper remedy, as ejectment *425 will not lie for an incorporeal hereditament. 2 Yeates, 331; 4 Day’s R. 330.
It will not admit of doubt, that the Company might acquire, either-by contract, or on a writ of ad quod damnum', a right to the soil, either in fee simple or for any less estate. In this, the acts are express. When a contract is made for a purchase, for the use of the canal, as well as for the use of an individual, the presumption is, as against the grantor or bargainor, that the greater estate was intended to pass. In the note or- memorandum of Mr. Young, the quantity of the estate is not mentioned; but a sale of lands on an agreement to sell, imports a fee. Brooke, Abridgment, title Contract, Bargain and Sale, folio 169. In the case of a corporation aggregate, if a freehold passes, it must be afee or an estate equivalent to it; for in a grant of land to a corporation aggregate, the word successors is not necessary, though usually inserted; for albeit, such simple grant be only an estate for life, yet, as^ a corporation never dies, such estate for life is perpetual, or equivalent to a fee simple, and therefore the law allows it to be one. (2 Black. C. 109.) The bill of Mr. Young has nothing on its face which indicates that he sold to the company the right of way, only ; and if that had been his intention, it should have been so expressed in the instrument itself. Nor is the inference, which is drawn from the silence of Mr. Young, to be rebutted by calculations fonnded on the value of the land per acre, based on the price given for the whole tract, and of course, including in the estimate the improvements which were on the property at the time of his purchase. Calculations of this kind would be too uncertain; and it is impossible for us to say for what reason the vendor, (supposing the fact to be as is alleged), chose to part with his property to the Company for less than its real value. On the argument of this part of the case, reliance was had on the resolution of the 30th June, 1796, which directs Mr. Govett to give credit to Mr. Young for the amount of his damages, as settled, for the land occupied by the tract of the canal. The latter part of the resolution is nothing more than a description of the land for which the damages are directed tobe paid; and as to the word “damages,” the Company have used the term which is used in the 6th section of the act of incorporation; the money which is given as a compensation to the owner, is given as his damages ; and this as well where the Company acquire a right to a fee simple, as any less estate.
But if a fee simple did pass, the defendants contend that the plaintiffs have lost the right of recovery. Under this head I shall consider
1. The statute of limitations.
2. That equity will not lend its aid to enforce the plaintiffs’ claim.
3. That there is a condition annexed to the contract, which has not been performed.
4. That the Company was dissolved in 1811.
*426 After what has been already said, we must take it that the plaintiffs have a fee simple or an estate equivalent thereto in the property in controversy. The Company had taken possession of the locus in quo, by excavating and embanking it, and filling up for the purposes of a canal. They had the only possession, which they were entitled to ; for it may well be doubted, whether they would have been at liberty to have taken an exclusive possession of the property, until, the passage of the act of the 29 th March, 1819, which made it the duty of the Company to confine its operations to the completion of the communication between the Tulpehocken, Quittapahilla and Swatara Creek. The Company have, by these acts, acquired a concurrent, if not an exclusive possession. It is therefore incumbent on the defendants to show, either an abandonment of the right, or an ouster of the possession so acquired and held by the Company, and'a hostile and adverse holding by the defendants.
As to( the allegation of an abandonment of right, there is scarcely a pretence, particularly as the plaintiffs had taken possession, and held the property, until 1819, for the purpose of complying with the acts, under which they were incorporated ; for it must be observed, that until the passage of the act of 1819, the duty and right to make the canal, remained as it was under the act of 1192; and more especially will not the doctrine of abandonment apply, when the whole amount of the purchase money has been paid? The Company, so far from relinquishing the right of property, asserted it, not only as to this, but to every other parcel of land held under similar titles. Indeed, I am not aware that their title has been the subject of dispute, except in this instance.
The entry of the owner of land, is barred only by an actual, continued, visible, notorious, distinct, and hostile possession, for twenty-one years. It is not necessary to entitle him to recover in ejectment, that he should prove, that he, or those under whom he claims, have been in possession within twenty-one years, before bringing suit. Hawke v. Senseman, (6 Serg. & Rawle, 21.) Mercer v. Watson, (1 Watts, 330.) Rung v. Shoneberger, (2 Watts, 27.)
The title draws to it the possession ; and when the possession is concurrent, no title can be acquired by either, on the ground of an adverse holding. The defendants claim the possession to have been adverse and hostile, because Mr. Young paid the taxes for the property, leased the land, without an exception of the part owned by the company ; because the tenant raised a crop of corn for one or two years in the bed of the canal; and because a fence was removed, and a fence run across the line of the canal. I see nothing in any one, or all the circumstances adverted to, which brings this case within the rule so distinctly laid down in Hawke v. Senseman, and the other cases cited. Mr. Young continued to hold and enjoy the land in ,the same manner as he had been accustomed to do, at the lime when the company were confessedly the owners of the land. There *427 was no open, visible and notorious change in his conduct, which could put the company on their guard, and make it, in proper time, their duty to assert their right. On the contrary, from any act of his, they could not have the slightest suspicion, that it was his intention to dispute their right. So far from this, he acknowledged their title by a receipt of the 7th May, 1821, for ten shares of the Union Canal stock, in lieu of his Delaware and Schuylkill stock. We cannot in justice to Mr. Young, suppose that at that time he had any idea that he held the possession by a title adverse to the company. It admits of some doubt, whether the whole tract without allowance, was assessed to William Young, but be this as it may, the payment of the taxes under the circumstances of this case, (supposing the interest of company liable to taxation,) furnished no evidence of an adverse holding. To give title by the statute of limitations, the possession must be continued. Raising a crop of corn for a year or tw'o, is not sufficient to give title, nor will the fact that a fence was run across the line of the canal, have that effect. In conclusion on this part of.theease, I will observe, that the rule in this state is, that when there is a given state of facts, either admitted or distinctly proved, whether the possession is adverse, is a question of law; and it would be error in such, a case to submit the question of title, to be determined by the jury. Rung v. Shoneberger, (2 Watts, 27.) Star v. Bradford, (2 Penn. Rep. 384.)
It is suggested, that this is an equitable action; and that it is a principle in a Court of Chancery, that he who asks equity, must do equity. The principle, which cannot be disputed, applies in its full force to an executory contract, when it is necessary to invoke the aid of the Court. Chancery leaves the party to his remedy at law, unless he complies with the equity principles, which govern the decision of the Court. I am not aware that the same strictness is applied to the case of a contract executed by delivery of possession, and payment of the purchase money; and in this particular, the cases cited differ from this case. There is a discretion undoubtedly vested in a Court of Chancery, but this is not an arbitrary discretion, but it is governed by certain fixed and well defined rules. .In order to claim the benefit of the rules, it is necessary for the defendants to show that they are entitled to equitable relief; and this must depend upon the construction of the contract. The equity on which the defendants rely, is, that the property was sold by William Young, on the condition of making the canal, which condition has not and cannot be performed. They contend that the plaintiff acquired but a base or qualified fee; and if it be so, it is a flat bar to the plaintiffs’ action.
A qualified, base or determinable fee is an interest which may continue forever; but the estate is liable to be determined by some act or event circumscribing its continuance or extent. The instances which are usually given to illustrate this species of estate, are a limi *428 tation to a man and his heirs so long as A. shall have heirs of his body; or to a man and his heirs, tenants of the manor of Dale, or till the marriage of B.; or so long as St. Paul’s Church shall stand, or a tree shall stand. In these and similar cases, the estate will descend to the heirs, but continue no longer than the period mentioned in the respective limitations, or when the qualifications annexed to it are at an end. If the owner of a determinable fee convey in fee, the determinable quality of the estate follows the transfer. JVemo potest plus juris in alienum transferre quam. ipse /label. The general policy of this country does not encourage restraints upon the power of alienation of land. A qualified, base or determinable fee is created by deed, by will, or by some other instrument of writing in express terms, and cannot be implied by law. The instrument which creates the estate shows at the same time its limitations. It is part and parcel of the title, and hence there is no injustice in the purchaser taking the estate with the determinable quality annexed to it; but here there is nothing in the agreement which qualifies the nature of the estate. It is an absolute sale of the fee simple without any restraint whatever; and it would be wrong that the vendee’s title should rest partly in writing and partly in parol. If Mr. Young intended to sell a base fee, determinable when the canal ceased to be used, it-should have been so expressed in the written evidence of the contract. It would be unjust that the law should imply this as a condition annexed to the agreement.
The act of incorporation, as has been before stated, authorizes the company to purchase an absolute right of property in the soil, either in fee simple or for a less estate; and in estimating the price the owner has a right to demand its outside value, without any regard to any supposed advantage, the improvement may be to any other property which he may possess. The same rule governs the jury in estimating the damages to the owner on the writ of ad quod damnum. In this the act differs materially from the recent acts of the Legislature, which direct that due regard shall be paid to the advantages which the improvement may be to the owner. In this contract it is fair to suppose that all these considerations were duly weighed, and that Mr. Young took his chance of a change of location, or any change^of interest, either by the Legislature or the company; if so, he has no more right to complain, when he has received the estimated value of his property than any other citizen of the Commonwealth. In The Turnpike Company v. Ivrin (2 Penn. Rep. 466,) it was decided that the benefit which results to individual property, by the incorporation of a company and location of a public road, does not in contemplation of law enter into the consideration of the contract of subscription; and such subscriptions are necessarily subject to the power of the Legislature, to change the location of the road, when the contrary is not expressly stipulated.
The owner has no assurance of any benefit which may arise from *429 the intended improvements, unless he chooses to make that a part of the contract. He depends altogether upon his calculation of chances. This may have operated upon the mind of Mr. Young. It is most likely he supposed the canal would greatly enhance the value of the remainder of his property. But this cannot be relied on as a circumstance to influence the construction of the contract. A person may purchase a piece of property from a view of erecting a factory, or of engaging in some business which the vendor may suppose will be highly advantageous to the neighbours, and particularly to himself. This may be his motive for making the sale, and may have had an influence on the price, yet, unless it be made a part of the contract, the law will not annex a tacit condition to the sale, that it shall be applied exclusively to the purposes for which it was originally intended. Nor would a Court of Chancery interfere, even when the contract was executory, on an allegation that the vendee intended to apply it to a different purpose, unless there was fraud in the vendee. It cannot be made to form part of the consideration -of the contract, unless so expressed in the agreement; for this would be confounding, as is said in the Turnpike Company v. Irvine, the consideration of the contract, with the motive, which induced the parties to enter into it. Want of faith on the part of the company is not alleged. The alteration in the original plan has arisen from necessity and not from choice.
But aside of those general principles, I cannot see what right Mr. Young and those who claim under him, have to complain.
. By the act of the 29th September, 1791, the legislature incorporated the President, Managers and Co. of the Schuylkill and Susquehanna navigation, for opening a canal and lock navigation between the rivers Schuylkill and Susquehanna. And by the act of the 10th April, 1792, they incorporated the. President, Managers and Company of the Delaware and Schuylkill navigation for opening a canal and water communication between the rivers Delaware and Schuy Ikilll On the 2d of April 1811,the legislature, at the request of an association of a number of the stockholders of the two companies mentioned, who represented that they', had formed a joint stock, and interest under the title of the Union Canal Company of Pennsylvania, repealed all the acts before passed in favour of the Schuylkill and Susquehanna navigation, and of the Delaware and Schuylkill navigation. They enacted that the corporate title of said corporation, should cease and be abolished, and that the corporate, style and title of the said company should be the Union Canal Company of Pennsylvania, “ under which name the said company shall have, hold and enjoy, all estates, grants,'rights, interests and privileges heretojfore held and enjoyed by them under their respective titles.”
The 5th section, directs the president to call a meeting of the stockholders, upon notice given ; and upon an agreement of a majority of the stockholders, certified to the Governor, it is made his duty *430 by proclamation, to declare the law in full force and effect. It further provides, that if any of the stockholders of said company shall neglect or refuse to deliver their certificates of slock, in either of the said companies, and accept stock in the Union Canal Company of Pennsylvania, they may bring suit, &c. to recover, a just compensation ; and their interest in said company, shall thereafter cease. In March, 1815, they passed an act to authorize a company to make a lock navigation in the river Schuylkill. On the 29th of March 1819, the legislature passed the act supplementary to the act, entitled “ An Act to incorporate the Union Canal Company of Pennsylvania.” The 11th section, makes it the duty of the company to confine its operations and improvements to the completion of the communication between the Tulpehocken, Quittapahilla, and Swatara creek. In the act of the 26th March, 1821, the legislature guaranteed the interest on the stock of new subscribers, authorized by the act, for 25 years. And on the 7th of May, 1821, William Young received 10 shares,of the Union Canal stock, in lieu of his Delaware and Schuylkill stock.
This short reference to the various legislative acts, shows, that up to the period of the passage of the act of 1819, the rights and duties of the company remained the same as under the original acts.of incorporation. The Legislature having incorporated a company for making a slack water navigation in the Schuylkill, and by this means secured a water communication with the interior, thought proper to relieve the Union Canal Company from making the eastern section of the canal. But this, by no means impaired their right to the property which had been vested in them by the act of 1811. The duty of completing the canal, was a public duty, of the violation of which William Young had no more right to complain than any other citizen, and over which the Legislature had a complete and absolute constitutional jurisdiction. They had the exclusive right to judge of the expediency of exempting the company from the necessity of finishing what they had so unsuccessfully begun ; and of the policy of this course, there can now be but one opinion. But what right have the representatives of William Young to complain. The ■legislature reserved to him the right to compensation, for his interest in the Delaware and Schuylkill Company; but instead of a vailing himself of it, with a full knowledge of all the legislative enactments, in favour of the Company, and a certainty that the work would be completed, he on the 7th of May, accepted the stock in the Union Canal Company, and surrendered his certificates of stock in the Delaware and Schuylkill Company. He acquiesces in the transfer of the property to the Company; for it will not do for him to avail himself of the advantages of the change, without at the same time submitting to any inconvenience or loss which may attend the substitution of the one for the other.
I have looked carefully through the acts which relate to these *431 companies, but cannot perceive, that at any time there was even a suspension of the rights and duties of the Company. They have always stood in full force. The two first companies were merged in the Union Canal-Company, and at the same time, the right to all the estate was vested in the'latter Company, in the most full and ample manner. There has been no change which can affect the right to any estate which has been vested in them. It follows from what has been already said, that this is not a case where either party is at liberty to rescind the contract, particularly after the great, change which had taken place in the circumstances of the parties, the increased value of real property, in that vicinity, and the express recognition and adoption of the contract by Mr. Young in 1821. Until the ejectment was brought, there was no offer to rescind the contract; and the stipulation which has been filed, cannot be permitted now to vary the rights of the parties.
One other question remains, Are Price and Fox bona fide purchasers without notice ?
In the view we have taken of this cause, it is unnecessary to determine whether the possession of the Company, and the various circumstances disclosed in the evidence, were sufficient notice to the purchasers, to put them on inquiry, as to the nature and extent of the interest which the Company had in the property. The defence, amounts in equity to a plea in bar, alleging that the defendants claim under a purchaser for a valuable consideration, without notice of the plaintiffs’ title. The principle of this plea, as Lord Eldon observes, in Wallwyn v. Lee, 9 Vesey, 24, and Justice Spencer, in 18 Johns. 5(52, is, “ I have honestly and bona fide paid, for this estate, in order to make myself the owner of it; and you shall have no information from me, as to the perfection or imperfection of my title, until you deliver me from the peril, in which you state I have placed myself, in the article of purchasing bona fide.” To the validity of such a plea, a number of particulars are absolutely essential, all of which are enumerated in Svgd.-553; and in 4 Desaussure, R. 280. The plea must distinctly aver that the consideration money mentioned in the deed, was bona fide and truly paid, independently of the recital of the purchase in the deed; for if the money be not paid, the plea will be overruled, or the purchaser is entitled to relief against the payment. A consideration secqred to be-paid, is not sufficient. If seems clear from the authorities, that such a plea will protect the possession óf a bona fide purchaser, without notice, from an equitable title, although even that has been sometimes questioned; but whether it will avail against a legal title, is more doubtful. From a review of all the authorities, Sugden. in his treatise, seems to think it clear, that the plea is a protection against a legal, as well as an equitable claim, although this conclusion has been doubted by Chancellor Desaussure in Snelgrove v. Snelgrove; who observes, that when the title attempted to be set up, is an equitable one, it seems very reasonable that *432 the Court should forbear to give its assistance in setting up such equitable title against another title set up by a fair purchaser. But when the complainant comes with a legal title, I do not perceive how he can be refused the aid of the Court. In Pennsylvania, under our recording acts, it cannot well be doubted that it would be a valid defence, as well against a legal, as an equitable title. More v. Mahon, (1 Chan. Cases 34.) Maitland v. Wilson, (2 Atk. 241. 3 Atk. 314.) Hardington v. Nichols, (3 Atk. 304.) Snelgrove v. Snelgrove, (4 Des. R. 287.) Murray v. Finster, (2 John. C. R. 157.)
The purchaser is not protected, if he has notice, previously' to the execution of the deeds and payment of the purchase-money; for till then the transaction is not complete; and therefore, if the purchaser had notice previously7 to that time, he will be bound by it.
In England the rule is carried to a great extent; for it would seem that a purchaser is not protected, unless the whole purchase-money has been paid. This precise point came before this Court in Youst v. Martin, (3 S. & R. 423,) where the English doctrine was overruled ; and it was held, that where the purchaser has paid part of the purchase-money, the owner of the equitable title, cannot recover the land without repaying the money paid by7 the purchaser, before receiving notice. With this equitable qualification, the rule itself is distinctly affirmed. The burthen of proof is thrown upon the purchasers; and in this instance, the defendants have failed to prove payment in whole or in part of the consideration, independently of the recital in the purchase-deed. The consideration is secured by mortgage on the property ; but that, as has been seen, is not sufficient, inasmuch, as equity will protect the purchaser against payment of it.
Motion for anew trial overruled, and judgment on the verdict.