# First Methodist Episcopal Church of Columbia *versus* Old Columbia Public Ground Company.

1. Wherever words in a conveyance are relied upon as creating a condition subsequent so as to create a base or determinate fee, they must not only be such as would of themselves create a condition, but must be so connected with the grant as to qualify or restrain it.

2. A. covenanted with B., C. and D., by an instrument under seal, that he would, when they required, convey to them a certain piece of land in fee simple in trust for the sole use of a company thereafter to be formed for supplying a certain borough with water, said ground to be for a reservoir of a certain size specified. B., C. and D. covenanted that A. should, upon erecting a hydrant at his own expense, have a supply of water from the reservoir for his use. The water company was formed, and B., C. and D. released all their rights under the above agreement to said company, which thereupon constructed a reservoir of the size specified on the premises. Several years afterwards A. constructed a hydrant, and drew water from the reservoir for his own use for a few years. He then discontinued the use of said hydrant, and subsequently died. Fifty years after the date of the original agreement, and twenty-five years after the discontinuance of the use of the hydrant, the water company abandoned the premises, filled up the reservoir, and conveyed the land to a

[Methodist Church of Columbia *v.* Old Columbia Public Ground Co.]

religious corporation for church purposes. In ejectment against the church by purchasers from the heirs of A.:

*Held,* That the agreement between A. and B., C. and D. did not constitute a base fee determinable on the cessation of the use of the premises for a reservoir, but that it passed a fee simple, and that, therefore, the defendant was entitled to judgment.

3. The obligation of the vendees, in the above agreement, to furnish a supply of water to A., was a covenant merely which they could not be called on to fulfil unless A. constructed a hydrant. A. and his heirs having failed to construct and maintain a hydrant for a quarter of a century: *Held,* That it was contrary to public policy to hold that the unexercised privilege should cast a clog on the title, and that the same must be regarded as having been relinquished.

4. Under the circumstances of the above cases: *Held,* That the fact that the grant was not followed by the execution of a deed did not defeat the vested estate, which passed to the grantees.

May 16th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas of *Lancaster county:* Of January Term 1883, No. 383.

Ejectment, by the president and managers of the Old Columbia Public Ground Co. against the First Methodist Episcopal Church, to recover a certain tract of land in the borough of Columbia. Plea, not guilty.

On the trial, before LIVINGSTON, P. J., the following facts appeared: On April 26th 1823, John L. Wright entered into a certain agreement or covenant under seal with Christian Breneman, Henry Martin and Jacob Mathiot, the material part of which was as follows:

" The said John L. Wright for the consideration hereinafter mentioned doth for himself, his heirs, executors and administrators, covenant, promise, grant and agree to and with the said Christian Breneman, Henry Martin and Jacob Mathiot and their heirs and assigns by these presents that he the said John L. Wright shall and will when thereunto required by the said Christian Breneman, Henry Martin and Jacob Mathiot, their heirs and assigns and at their costs and charges by such deed or deeds of conveyance as they or their counsel learned in the law shall advise, well and sufficiently grant, convey and assure unto the said Christian Breneman, Henry Martin and Jacob Mathiot their heirs and assigns in fee simple clear of all incumbrances in trust for the sole use of a company which may hereafter be formed for the purpose of bringing a supply of water into the borough of Columbia, a certain piece of ground for a reservoir to contain water which shall be sufficiently large for that purpose and not exceeding sixty feet square and shall be in what is commonly called the grave-yard field and near or adjoining the

7 OUTERBRIDGE—39

turnpike road on the line of land of Bethels' estate as may be found most suitable, and further agrees for himself, his heirs and assigns that the said water company when formed shall and may enter into and upon his lands for the purpose of laying pipes or conduits to convey the waters from any spring or stream to the said reservoir in said grave-yard field, and may also use any water on his lands for the purpose aforesaid which may be found on the same, that is on his lands lying northwest of land late Samuel Bethels, Esq., and further the said Christian Breneman, Henry Martin and Jacob Mathiot their heirs and assigns for and in trust as aforesaid, shall and may forever hereafter, and all times have free ingress and regress to the said lands for the purpose of laying pipes and repairing the same or any other thing that may be found necessary in or to the conveyance of water to the said reservoir they or their work-men doing as little damage as possible, and repairing any breaches by them made therein with the least possible delay and inconvenience to the said John L. Wright his heirs and assigns. In consideration whereof the said Christian Breneman, Henry Martin and Jacob Mathiot for themselves their heirs and assigns and in trust as aforesaid doth covenant promise, grant and agree to and with the said John L. Wright his heirs and assigns by these presents that they the said Christian Breneman, Henry Martin and Jacob Mathiot their heirs or assigns or some of them shall and will give grant and assure unto the said John L. Wright his heirs and assigns when the said reservoir or basin for containing water shall be erected the privilege of erecting a hydrant at said reservoir at his own expense and for his own use and shall have a supply of water therefrom sufficient to water his cattle or stock or for the use of a family at all times when the same is in repair or water sufficient therein."

The Columbia Water Company was subsequently organized and in 1823 took possession of the premises above mentioned, upon which it constructed a reservoir. In 1826, Breneman, Martin and Mathiot released to said company all their interest in the premises.

The water company continued to hold and use the land in question for a reservoir until 1872, when they purchased other ground upon which they constructed a new reservoir. They gradually filled up the old reservoir, and in 1874 conveyed the land on which it had been situate to the defendant in fee. Defendant thereupon erected a church or chapel on said premises at considerable expense.

Wright, prior to 1840, constructed a trough at which to water his cattle, which was supplied from the reservoir in question. In 1847 the trough ceased to be used, and in 1850 was

removed. Wright died in 1856, and in 1877 his heirs conveyed the premises to the plaintiffs.

The court directed the jury to find a verdict for the plaintiffs subject to the following points, which were reserved :

(1.) Whether, under the agreement of April 26th 1823, an absolute fee simple was granted, or only a qualified or base fee.

(2.) Whether or not, if a qualified or base fee only was granted the grantees having abandoned or ceased to use for the purpose of a reservoir (and sold to defendant) the land so granted in and by said agreement, it reverted to and vested in the grantor, or his heirs, who are now represented by the plaintiffs in this action.

Verdict accordingly for plaintiffs, subject to the opinion of the court on the points reserved. Subsequently the court entered judgment for the plaintiffs on the points reserved. Thereupon defendant took this writ, assigning for error, inter alia, the entry of judgment for plaintiffs on the points reserved.

*H. M.* and *E. D. North*, for the plaintiff in error.—The agreement did not create a base fee, but an absolute fee simple. It contains no words which can properly be construed to create a condition subsequent: Cook *v.* Trimble, 9 Watts 16 ; Perry *v.* Scott, 1 Smith 124 ; Paschall *v.* Passmore, 3 Harris 307 ; Kerlin *v.* Campbell, 3 Harris 500 ; Seebold *v.* Shitler, 10 Casey 137 ; Beck's Appeal, 10 Wright 527 ; Rawson *v.* Inhabitants, etc., 7 Allen 125 ; Packard *v.* Ames, 16 Gray 327 ; Bigelow *v.* Barr, 4 Ohio 358 ; Hunt *v.* Beeson, 18 Ind. 380.

*W. Augustus Atlee* and *A. G. Kauffman*, for the defendants in error.—The covenant or agreement in question created a base or determinable fee : Kirk *v.* King, 3 Barr 436 ; Scheetz *v.* Fitzwater, 5 Barr 126. Plaintiffs have the legal title, and are, therefore, entitled to a verdict, unless the defendant has an equity which enables him to prevail : Bear *v.* Whisler, 7 Watts 144 ; Cook *v.* Trimble, 9 Watts 15 ; Kenrick *v.* Smick, 7 W. & S. 41 ; Kirk *v.* King, 3 Barr 436 ; Hawk *v.* Greensweig, 2 Barr 295. No court of equity would decree a conveyance in this case, for there is an entire absence of consideration ; without consideration no court of equity decrees performance : Kennedy *v.* Ware, 1 Barr 445.

Chief Justice MERCUR delivered the opinion of the court, October 1st 1883.

This contention relates to the effect to be given to a writing under seal executed by John L. Wright on the 26th April 1823. For the consideration therein mentioned, he covenanted and agreed for himself, his heirs, executors and administrators,

with Breneman, Martin, and Mathiot, their heirs and assigns, that he would, when thereunto required by them, their heirs or assigns, by such deed or deeds of conveyance as they or their counsel learned in the law should advise, well and sufficiently grant, convey and assure unto them, their heirs and assigns in fee simple clear of all incumbrances, in trust for the sole use of a company which might thereafter be formed for the purpose of bringing a supply of water into the Borough of Columbia, a certain piece of ground for a reservoir, to contain water sufficiently large for that purpose, and not exceeding sixty feet square, describing the field in which it should be located. In consideration whereof the grantees therein named, for themselves their heirs and assigns, covenanted and agreed to give, grant and assure unto Wright, his heirs and assigns, when the said reservoir should be erected, the privilege of erecting a hydrant at said reservoir, at his own expense and for his own use, and should have a supply of water therefrom sufficient to water his cattle or stock, or for the use of a family at all times when the same should be in repair, or water sufficient be therein.

The Columbia Water Company was organized soon after, and in 1823 took possession of the premises in dispute under arrangement with the vendees named, and in 1826 obtained a deed from them for the same. The water company made a reservoir sixty feet square thereon, enclosed it with a fence, and continued to use it as such until 1872. Then it purchased other lands for a reservoir, some thirty rods therefrom, and ceased to use the former for that purpose. The water company retained possession of the land, and gradually filled up the reservoir; and in September, 1874, sold and conveyed the land to the plaintiff in error. The latter took possession thereof and erected a chapel thereon, at a cost of nearly $2,000.

Wright died in 1856, and in 1877 his heirs conveyed the premises to the defendants in error.

Prior to 1840,—the precise time does not appear,—a water trough was placed at the turnpike near the reservoir, from which the trough was supplied, and the latter was used for the watering of stock. It continued to be so used until 1847 or thereabouts. In 1850 the trough appears to have been removed, and none afterwards maintained there.

The learned judge held that under the agreement of 26th April 1823, the grantees took a base or qualified fee only, and when they and their vendees ceased to use the land for a reservoir, it reverted to Wright or his heirs, and directed a verdict in favor of the defendants in error, who purchased from those heirs. On the point reserved the court entered judgment in

favor of the plaintiffs below on the verdict. This presents the main cause of complaint.

Did the writing create a conditional estate? It contained none of the technical words usually employed for that purpose; neither sub conditione proviso, nor ita quod. It is true no one of these is essentially necessary to constitute a condition. Other words clearly equivalent thereto are sufficient. Hence an estate conveyed for an "English school-house and no other purpose," was held in Kirk v. King, 3 Barr 436, to revert to the grantors after the school therein had been discontinued for seven years, so long as to create a presumption of permanent abandonment. So in Scheetz v. Fitzwater, 5 Id. 126, a convey-ance of a mill-dam or pond of water and mill-race, and a perch of land on each side thereof for the use and service of a cer-tain mill with the land thereunto belonging, "and for no other use whatsoever," the title was held to be a base fee, determin-able on disuser as a pond. When, however, subsequent condi-tions are relied on to work a forfeiture, they must be created by express terms or clear implication, and are construed strictly: 1 Washb. on Real Property 447. The policy of the law is to render the alienation and transfer of land as free as possible, and conditions are not favored in law. Therefore whenever words can be construed either as a condition, reser-vation, or a covenant, the tendency of the courts is to construe them as one of the latter, rather than as the former: Hoyt v. Kimball, 49 N. H. 326; Wheeler v. Dascomb, 3 Cush. 285; Paschall v. Passmore, 3 Harris 295; McKnight v. Kreutz, 1 P. F. Smith 232.

A mere recital in the deed that it is made upon a certain consideration will not raise a condition. Where a deed set forth that the estate thereby conveyed was given to the com-missioners of a county in consideration of a county seat having been located on the premises, it was held that no condition was thereby created that the county seat should be kept there: Harris v. Shaw, 13 Ill. 456. In Cook v. Trimble, 9 Watts 15, it was held that the words "in consideration of $160, and a com-fortable living to be given to the said grantor, his wife, and his daughter during their natural lives," by the vendee, might cre-ate a covenant, but not a condition. In Kerlin v. Campbell, 3 Harris 500, a conveyance of land for a valuable considera-tion, in trust for the use of the inhabitants of the county of Delaware, to accommodate the public service of said county, was held not to be defeated on a sale and conveyance by the vendees, whereby the use for the public service ceased. See-bold v. Shitler, 10 Casey 133, was the case of a conveyance to the commissioners of a county and their successors in office in fee simple for the purpose of erecting thereon, a court-house,

jail and county offices. The county was subsequently divided; the seat of justice moved therefrom; the land sold and used for other purposes, and the proceeds thereof divided between the two counties. It was held that the title did not revert to the heirs of the original owners. In Union Canal Co. *v.* Young, 1 Whar. 410, Young entered into a contract with the Delaware and Schuylkill Canal Company, whereby he agreed to sell it so much of his land as was requisite for the canal, amounting to 135 perches. The same year the canal was dug through this land; but the contemplated communication with a river on each side was never completed. The object of the contract was therefore not realized. Many years thereafter, the land was sold by the assignee of the vendee, and occupied for building lots. It was held that the abandonment of the canal and the dissolution of the Old Canal Company, did not divest the fee created by the agreement, nor authorize Young to treat the contract as rescinded. In the case of Perry *v.* Scott, 1 P. F. Smith 119, the deed recited that it was made in consideration of natural love and affection, and that the grantee, the grantor's son, had promised to remain with the grantor and to assist him in working the land, and to support his widow after the death of the grantor. The consideration recited was held not to constitute a condition, although there were other facts in the case which might prevent a title vesting in the son.

Whatever words are relied on as creating a condition must not only be such as of themselves would create a condition, but must be so connected with the grant as to qualify or restrain it: Labaree *v.* Carleton, 53 Me. 211. It was said by Mr. Chief Justice BIGELOW in Packard et al. *v.* Ames et al., 16 Gray 327: " We know of no authority by which a grant declared to be for a special purpose, without other words, can be held to be a condition. On the contrary, it has always been held that such a grant does not convey a conditional estate unless coupled with a clause for the payment of money or the doing of some act by the grantee, on which the grant is clearly made to depend." To make the estate conditional the words must clearly show such intent: Cook *v.* Trimble, 9 Watts 15.

Turning to the writing executed by Wright we see that he absolutely and unconditionally covenanted to convey the premises in fee simple clear of all incumbrances, to the vendees, their heirs, or assigns, whenever requested by them. No restraint was imposed on an alienation of the land. No construction of a reservoir, nor any work on the ground, was required to precede the right to demand a deed. No clause provided for a forfeiture or termination of the estate, in case the land ceased to be used as a reservoir. No right of re-entry was

[Methodist Church of Columbia *v.* Old Columbia Public Ground Co.]

reserved by the grantor on any contingency. No technical word to create a condition was used. No other words were used, equivalent thereto, or proper to create a condition. The authorities show that the recital of the consideration and a statement of the purpose for which the land is to be used are wholly insufficient to create a conditional estate. The obligation which the vendees assumed to furnish water to the vendor, was at the most a covenant only. Whether they could ever be called on to fulfil it, depended on whether the vendor should avail himself of the privilege of erecting a hydrant. It was purely optional with him whether or not to exercise that right. If he failed to do so within a reasonable time, it would be against public policy to hold that this unexercised privilege should cast a clog on the title for an indefinite time.

The evidence shows that Wright was tardy in first claiming to exercise his privilege. It also shows that he ceased to claim or exercise it about nine years before he died; and although the reservoir was continued for some sixteen years after his death, it is not shown that his heirs ever replaced the trough or sought to exercise that privilege.

The fact that the grant was not followed by the execution of a deed does not defeat the vested estate. The grantor and his heirs had no rights which they attempted to enforce. After using the privilege for a time, there was an unmistakable relinquishment of all use under it. In Union Canal Co. *v.* Young, supra, the grant was by virtue of an agreement, and no deed had been executed, yet it was held the estate created was not thereby conditional. The learned judge, therefore, erred in entering judgment in favor of the defendant in error.

> Judgment reversed, and now judgment is entered in favor of the plaintiff in error non obstante veredicto.