RICHARD JONES ET AL. v. J. A. RENSHAW ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued October 28, 1889—Decided November 11, 1889.

(*a*) A testator devised real estate to the "Trustees of the First Presbyte-
rian Church of the Northern Liberties of Pittsburgh, commonly called
the Fourth Presbyterian Church of Pittsburgh," to be held for charita-
ble or religious uses.

(*b*) The church accepting the devise subsequently ceased to exist as a
religious society, but before its dissolution it conveyed the property to
trustees of the Presbytery of Pittsburgh, in trust, who then conveyed to
the Presbytery, for the same uses.

1. In such case, under § 10, act of April 26, 1855, P. L. 331, the property
remained with the indelible stamp of the trust upon it, and by no fail-
ure of a trustee, nor by the object of the trust ceasing, could it revert
to the heirs of the testator.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 232 October Term 1888, Sup. Ct.; court below, No. 68
June Term 1886, C. P. No. 1.

On March 26, 1886, a summons was served in an action of
ejectment brought by Richard Jones, William Jones and Ben-
jamin Jones against John A. Renshaw, David Robinson and
the Presbytery of Pittsburgh of the Presbyterian Church in
the United States of America, to recover a lot of ground in
Pittsburgh.

The plaintiff filed an abstract of title, showing title in James
Jones and thence to the plaintiffs, as his heirs-at-law. The
defendants' abstract of title showed title also in James Jones;
a devise by James Jones to "The Trustees of the First Pres-
byterian Church of the Northern Liberties of Pittsburgh, com-
monly called the Fourth Presbyterian Church;" the change
of the name of the devisee, by a decree of the District Court,
to the Fourth Presbyterian Church of Pittsburgh; deed from
the Fourth Presbyterian Church of Pittsburgh to John A. Ren-
shaw and David Robinson, trustees, in trust, etc.; and deed of

Decision of Court below.

John A. Renshaw and David Robinson, trustees, to the Presbytery of Pittsburgh, etc., in trust, etc.

To the defendants' abstract the plaintiffs filed a replication, averring: 1. That said devise was not of an absolute estate, but in trust for purposes which had ceased. 2. That said conveyance by said Fourth Presbyterian Church to John A. Renshaw et al., was void, and without consideration, was a diversion of the trust created under the will of James Jones, deceased, and that the said fourth church had ceased to exist. 3. That said grantees took no title under the said conveyance, and that the property, the said trust having ceased, had descended to and vested in the plaintiffs.

At the trial on December 21, 1887, after the testimony was submitted on both sides, by agreement of counsel a juror was withdrawn and the cause was submitted to the decision of the court, COLLIER, J.

On October 17, 1888, after argument, the court, COLLIER, J., filed the following decision:

FINDINGS OF FACT.

After considering the evidence and hearing the arguments of the learned counsel, the court finds as the facts from the testimony offered in this case:

1. That James Jones died in 1857, seised in fee of the property described in the writ in this case, having made his last will and testament, duly probated, wherein he provided inter alia: "And further, I do hereby give, devise and bequeath to the Trustees of the First Presbyterian Church of the Northern Liberties of Pittsburgh, commonly called the Fourth Presbyterian Church of Pittsburgh, all the real estate of which I may die seised, including the real estate at the corner of Penn street and Stevenson's alley aforesaid, . . . . . and all my personal estate of every kind whatsoever, including money, bank stocks and other proceeds of the sale of my real estate if sold by my executors as aforesaid, remaining in the hands of my executors after they shall have discharged the trusts hereinbefore recited, to be held . . . . . by the said corporation, entitled The Trustees of the Fourth Presbyterian Church of the Northern Liberties of Pittsburgh, their successors and assigns forever, subject nevertheless, etc.; . . . . then all the income of said estate, real and

personal, to be received, held and enjoyed by said trustees for the purpose hereinafter specified: The said real and personal estate so devised and bequeathed to said trustees, or the money derived from the sale thereof in case they should at any time sell the same, to form a perpetual fund, the annual rents, issues or income of which, after paying taxes, repairs, insurance, and other expenses of this trust, to be expended and applied from time to time under the direction of trustees of said church, in conjunction with the pastor and ruling elders of the said church, for the promotion of the interest of the Redeemer's kingdom and the spread of the gospel in that portion of the city of Pittsburgh in which said church is now or may hereafter be located."

2. The will contained no residuary clause other than as above quoted. The testator left surviving him, brothers, Benjamin Jones, Thomas Jones and William Jones, and sisters, Hannah Jones and Mary, intermarried with Arthur F. Gore. All died prior to 1879, intestate and without children, except Thomas Jones, who left his children, the plaintiffs, Benjamin and Richard Jones, with Wm. and Samuel Jones, the last two of whom died unmarried and without issue. Wm. Jones died intestate, and Samuel Jones left a will devising his residuary estate to said Richard and Benjamin Jones.

3. The Trustees of the First Presbyterian Church of the Northern Liberties of Pittsburgh, was duly incorporated in 1833, and its name, on June 7, 1872, was changed to the Fourth Presbyterian Church of Pittsburgh. It was located in the Twelfth (then Fifth) ward of the city of Pittsburgh. It maintained its ecclesiastical organization until 1879, when its session represented to presbytery the depletion of the congregation, and their inability to longer provide for the stated ministry of the Word in their midst, and on October 7, 1878, a committee of the presbytery was appointed to consider the advisability of dissolving the organization. This committee on June 8, 1880, reported to presbytery that the dissolution of the congregation had become inevitable, which it recommended, and that the committee be authorized to take necessary steps to effect this result, and secure to presbytery whatever property might be left. The report was approved by presbytery and a committee appointed for this purpose. In order to meet the requirements of the charter, all vacancies in the board of trust-

Decision of Court below.

ees of the Fourth church were filled during the summer of 1880, and at a congregational meeting had on September 14, 1880, the following resolutions were adopted by the committee, with the full approbation of the congregation and the board of trustees:

" Resolved, That, presbytery approving, the Fourth Presbyterian Church of Pittsburgh be and the same shall be dissolved October 1, 1880; and, prior to that date, the trustees of the corporation shall make, execute and deliver to John A. Renshaw, treasurer of the presbytery, and David Robinson, and to their successors, as the same shall from time to time be designated by presbytery, a deed for all the property, goods, chattels, rights and credits, lands and tenements now held by them, to be held by said John A. Renshaw and David Robinson, and the survivors of them and their successors, in trust for and subject to the order of said Presbytery of Pittsburgh; and further,

" Resolved, That in the judgment of this committee, all property and moneys which may remain after the debts of the Fourth Presbyterian Church shall have been paid, shall be guarded sacredly, and held for missionary purposes in that portion of the city where the Fourth church has been located, until God in his providence may open the way for the renewal of the Fourth church enterprise, in that or some other locality; and further,

" Resolved, That all services, including Sabbath School, be held under the auspices of the committee upon Presbyterian missions, to whose care the same is hereby relegated; and that the trustees holding the property for presbytery are hereby directed to allow such services until the property shall have been disposed of; and finally,

" Resolved, That E. R. Donehoo, in behalf of presbytery and this committee, shall issue to such members of the Fourth church as may be entitled to them, certificates of dismissal to other evangelical churches with which God in his providence may order their lot."

4. This was on September 21, 1880, approved by presbytery; and in pursuance thereof a deed was on September 23, 1880, made, executed and delivered by the president and secretary of the board of trustees conveying all the Fourth church property to John A. Renshaw and David Robinson, trustees, and

the congregation was dissolved by the dismissal of all its members to other churches, and it has since been without pastor, elder or membership, and has not had any new trustees elected under the charter.

5. The church building, which was no part of the James Jones property, has since 1881 been occupied as a foundry warehouse. On September 24, 1883, Jno. A. Renshaw, et al., trustees, conveyed under the direction of presbytery, the Fourth church property, under the same trusts held by them, to presbytery, which in the interim had been duly incorporated. On October 2, 1883, presbytery directed its board of trustees to pay over to the committee on presbyterial missions the net income of the remaining property of the late Fourth church, for missionary work in the late Fourth church field, or elsewhere, as they shall approve. On June 10, 1884, presbytery instructed the trustees to transfer to the Bloomfield church (whose name had been changed to the Fourth Presbyterian Church), located in the 16th ward of said city, the proceeds of the sale of certain property of the Fourth church,—no part of the Jones property however,—and also the custodianship of the James Jones fund.

6. On September 10, 1884, presbytery adopted the following resolution :

" It is resolved that the trustees of the corporation, (i. e. corporation of the Presbytery of Pittsburgh,) are hereby instructed to await the decision of the Supreme Court before taking action on Fourth church property. They are further instructed that when the transfers of the property directed by the resolution of June 10, 1884, are made to the said Fourth church, they retain the custodianship of the James Jones property, and pay over to the trustees of said Fourth church the net income derived from the said property, as the same shall be received, for a period not exceeding five years: and the resolution of June 10, 1884, is hereby modified so as to correspond with this instruction."

No money, however, has yet been paid over under any of the said resolutions.

7. I further find that the will of said Jones was made after the passage of the act of April 26, 1855, P. L. 331 ; that the defendants are in possession of the premises described in the

Decision of Court below.

writ; and that the title to the premises in dispute was in the said Jones at the time of his death, and that the premises described in the writ are the same, which were devised to the Trustees of the First Presbyterian Church of the Northern Liberties of Pittsburgh.

## CONCLUSIONS OF LAW.

On these facts found by me, and admitted by the learned counsel for both plaintiffs and defendants, the plaintiffs contend that the devise to the said the Trustees of the First Presbyterian Church of Northern Liberties of Pittsburgh, by the last will and testament of James Jones, deceased, was a devise in trust, for the purposes therein specified; that the said trust and the purpose for which it was created, has failed, ceased, and determined, and that thereupon the estate in fee simple in said premises and the right of possession thereto descended to and vested in the plaintiffs as heirs-at-law of said James Jones, deceased. On the other hand, the defendants contend that the objects of the trust are still in existence, and therefore the trust remains, notwithstanding the above facts.

" The foundation upon which the doctrine of charitable uses rests in this state," says the Supreme Court in Mann v. Mullin, 84 Pa. 300, " is firmly settled. While the statute of 43 Elizabeth is not in force, the principles which the English Chancery has adopted on the subject obtain here, not by virtue of the statute, but as part of our common law. The fact is that those principles were recognized and applied in England before the statute, which only introduced a new remedy. Hence, trusts for charities with us have always been upheld and enforced, no matter how uncertain were the objects, and though the effect evidently was to create a perpetuity. These have never been allowed as objections to their validity. Yet before the year 1855 it was a clear and well settled rule that when the objects of the charity were uncertain, there must be vested somewhere in a competent trustee or trustees, the discretion absolutely necessary to carry them into effect by selecting those objects. By the provision of the tenth section of the act of assembly, passed April 25, 1855, entitled, ' An act relating to corporations and to estates held for corporate, religious and charitable uses,' P. L. 331, this rule is impliedly recognized and a remedy enacted for future cases, in which

the donor or testator has omitted to vest such a discretion in a trustee or trustees, or it has failed to be effectual by the death or other disability of the person or persons whom he may have appointed. That provision is, 'that no disposition of property hereafter made for any religious, charitable, literary or scientific use shall fail for want of a trustee, or by reason of the objects being indefinite, uncertain, or ceasing, or depending upon the discretion of a last trustee, or given in perpetuity, or in excess of the annual value hereinbefore limited; but it shall be the duty of any Orphans' Court or court having equity jurisdiction in the proper county to supply a trustee, and by its decrees to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity; for which purpose the proceeding shall be instituted by leave of the attorney-general of the commonwealth, on the relation of any institution, association or individual, desirous of carrying such disposition into effect.' "

We do not deem it necessary to decide whether under the statute of 43 Elizabeth this trust can be sustained, although it might be argued with great force that gifts to religious and charitable uses have always been pre-eminently favored in Pennsylvania: Missionary Soc.'s App., 30 Pa. 433; that the objects of this charity are not uncertain, and that discretion was and is vested in competent trustees to carry it into effect; because we regard the act of April 26, 1855, as furnishing, in the language of Chief Justice SHARSWOOD in the case above cited: Mann v. Mullin, 84 Pa. 300, a remedy for cases "in which the donor or testator has omitted to vest such discretion in a trustee or trustees, or it has failed to be effectual by the death or other disability of the person or persons whom he may have appointed." This being our view of the law, we are of the opinion, and so hold, that the trust has not failed and determined, and that the defendants are entitled to judgment, and we find in their favor.

And now, to wit, October 17, 1888, judgment is entered in favor of the defendants and against the plaintiffs, for the premises described in the writ in the case with costs.

The plaintiffs thereupon took this appeal, specifying that the court erred in entering judgment in favor of the defendants.

Opinion of the Court.

*Mr. J. P. Hunter* (with him *Mr. Thos. M. Marshall*), for the appellants.

Counsel cited: Lauman v. Railroad Co., 30 Pa. 42; Riddle v. Locks, 7 Mass. 169; Hampshire v. Franklin, 16 Mass. 76; McLaren v. Pennington, 1 Paige 107; Enfield Toll Co. v. River Co., 7 Conn. 45; Attorney General v. Society, 10 Rich. 604; Mumma v. Potomac Co., 8 Pet. 281; Treadwell v. Mfg. Co., 7 Gray 393; 2 Kent. Com., 310, 311; Presbyterian Church, 111 Pa. 163; Act of April 26, 1855, P. L. 331; Moggridge v. Thackwell, 7 Ves. 36; Fountain v. Ravenal, 17 How. 369; Wright v. Linn, 9 Pa. 433; Magill v. Brown, Bright. 346; Perry on·Trusts, 708; Witman v. Lex, 17 S. & R. 93; Zeisweiss v. James, 63 Pa. 465; Green v. Allen, 5 Humph. 202; Holland v. Peck, 2 Ired. Ch. 262; Methodist Church v. Remington, 1 W. 226: Manners v. Library Co., 93 Pa. 174; Mann v. Mullin, 84 Pa. 297; McGirr v. Aaron, 1 P. & W. 49; Martin v. McCord, 5 W. 493; Beaver v. Filson, 8 Pa. 335; Corbyn v. French, 4 Ves. 430; Cherry v. Mott, 13 Eng. Ch. 132; Children's Hospital's App., 10 W. N. 313; Act of May 26, 1876, P. L. 211.

*Mr. W. B. Negley* (with him *Mr. T. C. Lazear* and *Mr. J. H. Baldwin*), for the appellees:

Counsel cited a number of cases by the volume and page of the reports, but without the names of the parties.*

PER CURIAM:

The plaintiffs in this ejectment have no title, and cannot recover under any circumstances. The premises in dispute were devised by James Jones to "the Trustees of the First Presbyterian Church of the Northern Liberties of Pittsburgh, commonly called the Fourth Presbyterian Church," for a charitable or religious use. The said church has ceased to exist as a religious organization, but, before its dissolution, conveyed the premises in dispute to trustees appointed by the presbytery to receive the same. We are not called upon to decide upon the regularity of this transaction. It is enough to say that the plaintiffs have no standing to call it in question. The trust

---

* When cases are so cited, the Reporter cannot verify the careless work of the paper-book printer.

property remains, with the indelible stamp of the trust upon it, and by no failure of a trustee or the object of the trust ceasing can the property revert to the heirs of the grantor. This by force of the act of April 26, 1855, P. L. 331.

Judgment affirmed.