# Fernstler et al. *versus* Seibert et al.

The trustees of an unincorporated independent church congregation in whom the title to the church property is vested for the use of the congregation, may maintain ejectment against a portion of the congregation who seceded, formed a separate organization and took possession of the church property.

May 18th, 1886.   Before MERCUR, C. J., GORDON, PAX-SON, STERRETT, GREEN and CLARK, JJ.   TRUNKEY, J., absent.

ERROR to the Court of Common Pleas, of *Lancaster county:* Of January Term 1886, No. 439.

This was an action of ejectment brought June 4th, 1879, in the name of Edward K. Seibert, Elias Weidman, Levi Sherp, Israel Zartman, trustees; Daniel Weidman, Samuel Miller, Henry Donmoyer, Samuel Engle, elders; Israel Miller, William Weidman, Samuel Keach, and Andrew Weidman, deacons, the church council of the Evangelical Lutheran congregation of Brickerville, against Rev. M. Fernstler, Jonas Herr, and Hannah Buchter, for a tract of about thirty-five acres of land in Elizabeth township, Lancaster county, on which are erected a parsonage, church edifice, tenant house, barn, stable and other improvements. December 8th, 1881, and before trial, Levi Dreisch, Edward Schnearer, Geo. W. Steinmetz, Peter Elser, Rufus Kline, and others, presented to the court their sworn petition, setting forth therein, *inter alia,*

[Fernstler v. Siebert.]

that said plaintiffs were not the lawful church council of the Lutheran congregation entitled to the use and enjoyment of said property, but that the Lutheran congregation (to which said petitioners belong), who are the majority of the Lutherans entitled to the use of said church property, have a duly and lawfully elected church council and church organization holding and enjoying the use of said property according to the church polity and the original grant from the Penns, who were the proprietaries of the province of Pennsylvania. Moreover, that the said Rev. M. Fernstler, Jonas Herr and Hannah Buchter, were their lawful tenants; that Rev. M. Fernsler was on September 29th, 1878, duly elected the regular minister by the majority of Lutherans belonging to said church and congregation. The court thereupon allowed said petitioners to interplead and have their names entered on the record as co-defendants.

Plea not guilty.

The following are the facts as they appeared on the trial before PATTERSON, J.

The land in contest was conveyed May 10th, 1744, by John Penn, Thomas Penn, and Richard Penn, Esquires, late proprietaries of the province of Pennsylvania, to Jacob Kline, Lawrence Hoff, Conrad Glassbrinner and Alexander Zartman, and to the survivors and survivor of them and his heirs, "in trust nevertheless, and to and for such uses, intents and purposes as the said Lutheran congregation of Warwick township, aforesaid, shall at their several meetings from time to time order, direct and appoint." About the same time in the year 1744, the aforesaid grantees conveyed said property to Martin Wydman, George Albert, Leonard Miller and David Bheler, and to the survivors and survivor of them and his heirs and assigns, "in trust nevertheless and to and for such uses, intents and purposes as the said Lutheran congregation of Warwick township aforesaid shall at their several meetings from time to time order, direct and appoint." On the back of this deed is indorsed a resolution, by the members of said congregation, authorizing said change of trustees and conveyance. There were no further conveyances of said property since the year 1744, and the legal estate in said land and premises became vested in the congregation without any further conveyance.

Upon this land were erected the improvements of the Brickerville church property. There was no Lutheran synod established in the United States until the year 1748, before which time Lutheran ministers came from Europe. The Ministerium, commonly called the "old synod," was the first

organized. As the Lutheran church expanded from time to time, other district synods were organized, until about the year 1821; the different district synods, including the Old Synod, organized the General Synod of the United States, which synod is the organized head and authority of the Lutheran church. From the records it appears that this congregation from its beginning, about the year 1736, to the year 1867, elected Lutheran ministers without regard to any particular synod. It always was a free and independent Lutheran church.

In 1867 there was a division of the church, a minority of the church and their pastor, Rev. Mr. Harpel, went over to the new synod. After much dissension in the church the new synod party withdrew entirely from the church, held their own meeting, elected Rev. Mr. Fernstler their minister and took possession of the church property, claiming that they were the Lutheran congregation in trust for whom said church property was held.

They filed a bill in equity to restrain the old synod party from using the church. After hearing the bill was dismissed. The plaintiffs then brought this action to recover possession of the church property.

The defendants presented, *inter alia*, the following points:

1. That under the evidence disclosed in this case, this action of ejectment cannot be sustained; equity alone can apply the required remedy, where there is a division in an unincorporated, free and independent church congregation such as this.

"Ans. Court declines to affirm that point. (Second assignment of error.)

2. That the land for the recovery of which this suit was brought, was originally conveyed in the year 1744, by John Penn, Thomas Penn and Richard Penn, late proprietaries of the Province of Pennsylvania, to Jacob Kline, Lawrence Hoff, Conrad Glassbrinner, and Alexander Zartman, trustees, and to the survivors and survivor of them, and his heirs forever, in trust, nevertheless, and to and for such uses, intents and purposes, as the said Lutheran congregation shall at their several meetings from time to time order, direct and appoint. In the same year, 1744, said Lutheran congregation, at a meeting for that purpose held, unanimously resolved and agreed to change the said trustees, who agreed and consented to convey and make over all their estate, right, title, trust and interest in the said tract of land and premises unto Martin Wydeman, George Albert, Leonard Miller, and David Bheler, being the new trustees chosen and elected by the Lutheran congregation at their said meeting. And the aforesaid grantees, Kline, Hoff,

Glassbrinner and Zartman, conveyed said property to said Wydeman, Albert, Miller and Bheler, being the new trustees, and to the survivors or survivor of them, his heirs and assigns forever, in trust nevertheless and to and for such uses, intents and purposes as the Lutheran congregation shall at their several meetings from time to time order, direct and appoint. That there has been no other conveyance of said land and premises, which is now in dispute in this controversy. Hence the legal estate in said land and premises is vested in the *cestuis que trust*, who are the Lutheran congregation.

"Ans. Yes—and we say the equitable title, if not the legal title of this church property, is in the duly elected trustees, and the trustees in connection with the church council, and who have the right of possession; and ejectment in Pennsylvania, say the Supreme Court, is an equitable action, and is the mode of trying title, as well as the right of possession." (Third assignment of error.)

Verdict for the plaintiffs and judgment thereon whereupon the plaintiff took this writ assigning for error *inter alia*, the answer of the court to the defendants' first and second points as shown above.

*J. L. Steinmetz* (*Samuel H. Reynolds* with him), for plaintiffs in error.—Ejectment cannot be maintained; equity alone can apply the required remedy, where there is a division in an unincorporated, free and independent church congregation, such as this.

The legal and equitable title to the land described in the writ is vested in the congregation, and not in the trustees. In Westcott et al. *v.* Edmunds, 18 P. F. S. 36, the court decides that where the active duties of a trustee holding the legal title have ceased, "the law in this state executes the legal title in the remaindermen without the formality of a conveyance." That decrees have been made in such cases compelling trustees to convey to the beneficiary, "but this was merely to remove the cloud from the title arising from the apparent trust. Whatever might have been the impression as to the necessity of such a decree, it is now clearly settled by authoritative decision that the legal estate vests without a conveyance:" Bacon's Appeal, 7 P. F. S. 504; Dodson *v.* Ball, 10 Id. 493, 501; Rife *v.* Geyer, 9 Id. 393, 397; Freyvogle *v.* Hughes, 6 Id. 228; Nice's Appeal, 14 Wright, 143; Barnett's Appeal, 10 Id. 403.

"Whenever the entire beneficial interest is in the *cestui que trust*, without restriction as to its enjoyment, it will be considered as executed:" Rife *v.* Geyer, 9 P. F. S. 393; Bacon's Appeal, 7 Id. 504.

The law strikes down passive trusts, instead of continuing

them for the mere benefit or pleasure of the trustee: Yarnall's Appeal, 20 P. F. S. 336; Ogden's Appeal, Id. 501; Koenig's Appeal, 7 Id. 353; Megargee *v.* Nagle et al., 14 Id. 216.

· "A simple trust gives to the *cestui que trust* a right to the possession, control and disposal of the property, and the legal estate becomes executed in him:" Dodson *v.* Ball, 10 P. F. S. 496.

If the legal title is not vested in the *cestui que trust*, then it must be in the heirs of the survivor of the trustees named in the grant. In either case, the Lutheran congregation has the right to the use and possession of the church property. Though the defendants in error were the legally constituted church council (which we deny), they could not maintain his action of ejectment, because they have neither the legal nor equitable title, and have failed to show any right of possession other than that which they enjoyed with the rest of the congregation.

This congregation was never incorporated, and possesses no corporate functions or immunities conferred upon it by law.

According to the principles recognized in McGinnis *v.* Watson, 5 Wr. 9; Presbyterian Congregation *v.* Johnson, 1 W. & S., 9; Trexler *v.* Mennig, 2 W. & C. 67; Ehrenfeld's Appeal, 5 Out. 186, this congregation is the unit of power, and may sever and establish from time to time whatever synodical relations it prefers. All that is required is, that the faith of the congregation shall be Lutheran. The right of the majority to control this church property within the trust cannot be restricted by any constitution, church regulation or act of incorporation: Philips *v.* Bury, Skin. 513; Ehrenfeldt's Appeal, 5 Out. 186.

No verdict in ejectment between a divided congregation was ever sustained in this state, unless it was in favor of the defendant.

In all cases where ejectment was brought, the society was duly incorporated: Pres. Cong. *v.* Johnson, 1 W. & S. 9.

That equity is the proper remedy between a divided and unincorporated church congregation, has been held in a number of cases: Henry et al. *v.* Dietrich et al., 3 Norris, 286; Kisor's Appeal, 12 P. F. S. 435. Equity alone can apply the required remedy, while the malcontents can be restrained and held to a full performance of their associated duties, only by the powers of a chancellor."

LOWRIE, C. J. said in Kerr *v.* Trego, 6 Wright, 296: "It is the very remedy usually adopted when the churches divide into parties, and we applied it in three such cases in the last year. One of the cases was Sutter *v.* The Dutch Church, 6 Wright, 503." See also Thomas *v.* Ellmaker, 1 Parsons, 98;

[Fernstler v. Siebert.]

Price v. Maxwell, 4 Casey, 23 ; Stockdale v. Ullery, 1 Wright, 486.

*D. G. Eshleman* and *Simon P. Eby*, for defendants in error. —It may be conceded that all the members of the Brickerville Church congregation are the *cestuis que trustent*, who are beneficially entitled to enjoy the trust created by the deed in the manner prescribed by the deed. But this is not a suit by *cestuis que trustent* against *co-cestuis que trustent*. It is a suit brought by the trustees of the church duly elected and installed, in whom the legal title is vested, under the constitution adopted in the manner prescribed by the deed, for the purpose of taking care of the land belonging to the church and the buildings thereon against M. Fernstler, Jonas Herr and Hannah Buchter, for the possession of certain lands and buildings belonging to them in trust for the congregation.

All the "trustees are joined"—the other members of council probably need not have been joined in the suit—and all the defendants are joined. The defendants are neither trustees nor *cestuis que trustent*. The original defendants are mere intruders. · They are in possession without the consent and against the written notice of the owners of the property, and the other defendants are mere interlopers, who withdrew from the congregation and set up a separate church government for themselves.

But if these trustees do not hold the legal title, they are nevertheless entitled to recover possession of this property.

An equitable right to possession of land is sufficient to enable a plaintiff to recover in ejectment : Presbyterian Congregation v. Johnston, 1 W. & S., 9, 56.

By the constitution, the trustees are to have the supervision of the lands belonging to the congregation, and the church and school buildings thereon. And though they hold the church property in trust for the church and congregation, still it is their possession, and the courts are bound to protect them against every irregular and unlawful intrusion, made against their will, whether by members of the congregation or by strangers : Presbyterian Congregation v. Johnston, 1 W. & S. 57 ; The People v. Runkle, 9 Johns. Rep. 156.

Actions of ejectment have frequently been resorted to in church controversies, and in enforcing and regulating trusts, since the passage of the Act of June 10th, 1836, conferring equity jurisdiction upon the courts : Presbyterian Congregation v. Johnston, 1 W. & S. 9 ; Means v. The Presbyterian Church, 3 W. & S. 303 ; Trustees v. St. Michael's Church, 12 Wr. 20 ; Church v. Roland, P. F. S. 432.

In Church v. Roland, SHARSWOOD, J., says, page 441 : "It

cannot be maintained, at this late day, that the effect of investing the courts with separate equity powers to be exercised according to the mode of proceeding in use in the English Court of Chancery, was to divest them of any part of the jurisdiction before possessed by them to afford the same relief through the common law forms. Equity is still as much a part of the law of Pennsylvania as it was in 1787, when C. J. McKean so declared it to be in Pollard *v.* Shaeffer, 1 Dall. 210; Lehr *v.* Beaver, 8 W. & S. 106. The action of ejectment may still be employed as a remedy to compel the specific performance of a contract for the sale of land, or to enforce a trust in regard to it. Every volume of reports since 1836 abounds with the evidence of this, in the determination of numerous cases in which it has been silently assumed. Besides, it was expressly so decided in Aycienna *v.* Peries, 6 W. & S.,257; Biddle *v.* Moore, 3 Barr, 161; and Corson *v.* Mulvany, 13 Wr. 88; so that if any point is ever to be considered completely at rest, it is this."

Before the passage of the Act of April 10th, 1836, the action of ejectment was the only remedy to enforce trusts in regard to real estate.

In Witman *v.* Lex, 17 S. & R. 91, Gibson, C. J., says: "Where the object is defined, and we are not restrained by the inadequacy of the instrument who we are compelled to employ, we give relief to that extent that Chancery does in England."

Methodist Church *v.* Remington, 1 Watts, 218, was an action of ejectment to enforce a trust. On page 224, Gibson, C. J., says: "The decision in Witman *v.* Lex, 17 S. & R. 388 (88), is full to the point that a trust in favor of an unincorporated religious or charitable society is an available one; and were the Methodist Society constituted entirely of members resident within the States, would probably rule the cause."

A bill in equity to enforce the rights claimed by the plaintiffs below would have been dismissed, on demurrer, as being a mere ejectment bill.

Mr. Justice Gordon delivered the opinion of the court, October 4th, 1886.

On the former trial of this case in the court below, the learned judge of that court gave a binding instruction to the jury to find for the plaintiffs, and this on the ground of the conclusiveness of the decree previously made upon a bill brought by the Rev. W. I. Cutler and others, styling themselves pastor, elders, trustees and deacons of the Evangelical Lutheran Congregation of Brickersville, Lancaster County, Pennsylvania, against Edward K. Seibert, Samuel Miller and others, who in

their answer claimed to be the only proper and lawful trustees, elders and deacons of the said congregation, hence, its legal representatives, and as such entitled to the exclusive use and control of its property. On a writ of error taken to the judgment thus rendered we reversed the court below. The reason for this disposition of the case, as appears from the opinion, was that, conceding the conclusiveness of the decree as aforesaid, made on the 13th of April, 1878, yet as this decree was several months prior to the election of the Rev. Mr. Fernstler, and as there was a proposition to prove that he was regularly called by the congregation, and duly installed as its pastor, the proof thus proposed ought to have been received and submitted. The material subject of dispute was thus narrowed down to the single question of the election of the Rev. Mr. Fernstler by the Evangelical Lutheran Congregation of Brickersville. It is true, a doubt was therein expressed as to whether the action of ejectment could properly be used to settle the controversy between these parties. But this doubt arose from the obscure and imperfect manner in which the case was then presented to us. Had it then appeared as it now does, that Mr. Fernstler was not elected by the congregation; that he was put into the possession of the parsonage by persons who were not officers of the church; in other words, that he was a mere intruder, and that the question was one purely of the right of the congregation to have and use its own property, we think there could have been no hesitation concerning the form of action. It would, indeed, be but a sorry compliment to the intelligence of this court to allege that it had been induced to regard a purely ejectment bill as cognizable in equity, or to hold that any other than the ordinary common law forms of action must be adopted by a charity to remedy a trespass upon, or intrusion into its property. It is idle to say that this congregation has no such power because not vested with the legal title to the property. It was so vested by the deed of the proprietaries, dated May 10th, 1744, and by the subsequent deed of Kline, Hoff, and others, to the trustees of the congregation, dated the 24th of February of the same year.

As the Act of 1731 gave to religious societies capacity to take and hold land, it has been held that a conveyance to trustees for the use of such a society executes a legal estate in the congregation itself: Brendel v. The German Reformed Congregation, 9 Ca., 415; Griffitts v. Cope, 5 Har., 96. It is, however, an extraordinary position to assume that only the holder of the legal title can maintain ejectment, when the only question directly involved in such action is the right of possession. As early as the case of Kennedy v. Fury, 1 Dal., 72, it was held that the *cestui que trust* could bring this action in his own

name. So, every lawyer knows that when the beneficiary is entitled to the possession of the property he may maintain ejectment even as against the trustee. The proposition is, therefore, of a very crude character which holds that the Brickersville congregation, by its trustees, cannot recover the possession of its property through the usual common law remedy, but must resort to a bill in equity against every trespasser or intruder who may choose to enter upon that property. Why not say at once that it has no remedy whatever; for if any thing is well established it is that equity has no jurisdiction of a purely ejectment bill, and so as to a mere trespass. Admitting that every question involved in the bill were to be determined in this case, yet as the main matter for settlement is the right of possession, we cannot see why ejectment would not lie. It was certainly so held in the Presbyterian Congregation *v.* Johnson, 1 W. & S., 9; The Chief Justice (GIBSON) saying: the jury had been inaccurately instructed that this action could not be maintained by the congregation, and this though it had but an equitable title. The assertion, however, is, that the case cited is not an authority in point because the congregation was a corporation, whilst the society involved in the present action is unincorporated. But the difference is effectively nothing, for the one is as much the peculiar subject of equity jurisdiction as the other. What remains has been fully disposed of by the decree of the 13th of April, 1878, and the verdict in this case. The very able report of the learned Master makes a full disposition of the main point in controversy, and conclusively shows that upon no ground whatever can those by whom the Rev. Mr. Fernstler was put into the possession of the parsonage be regarded as representing the Lutheran Congregation of Brickersville. Finding themselves in the minority in the congregational meeting of the 14th of February, 1876, they withdrew therefrom, and thenceforth maintained a separate organization. It is true that Mr. Fernstler was called by the votes, not only of a majority of the meeting which elected him as its pastor, but also without dissent; it was, however, a meeting exclusively of the seceders with which the old congregation had nothing to do, and with which it had, in fact, no right to interfere. This was the question submitted to the jury, and so fully and fairly submitted as to preclude exceptions; and it being so submitted the verdict has settled beyond controversy, that the defendant was not elected by the lawful congregation; is not the pastor of the Brickersville church, and is but a trespasser and an intruder in and upon the church property, without right or title.

The truth is, these seceders are entitled to no sympathy or consideration. They and their minister were thoroughly ac-

quainted with the peculiar polity of their own church, and well knew that a majority of the congregation had full and lawful power to determine its synodical relation. So, after the decree of the court of Common Pleas, they were fully informed of their legal status, hence, there was no justification or excuse for their fractious and improper interference with the rights of the congregation from which they had withdrawn.

Nor can we withhold our commendation of the Christian spirit of forbearance exercised by the officers of the Brickersville church toward their seceding brethren. They avoided, as far as they could, all occasion of offence; they permitted them to · use the church building for their meetings, and only moved in the assertion of their own rights when they were compelled so to do by an unlawful seizure of their property. Thus, however the case may be regarded, the defendants have no just cause of complaint, and certainly not as against the court below, for it fairly submitted to the jury every fact that could properly be so submitted, and in this manner carefully carried out the instructions of this court. What we have said with reference to the materiality of the decree, and its conclusiveness, disposes in effect of the assignment which embrace the rulings of the court below on the several exceptions to the admission and exclusion of evidence, so that without special mention of these assignments, we have fully disposed of every principle on which they are founded, and, therefore, dismiss them without further comment.

The judgment is affirmed.