Estate of Richard Smith, deceased.    Appeal of Benjamin F. Walker.

*Will—Charitable bequest.*

The purpose and object of a gift in a will, and not the motive of testator, determines its character as religious, charitable or otherwise.

*Wills—Charitable bequest—Perpetuities.*

Gifts in a will of $500,000 for the erection of a memorial monument or arch in a public park, $50,000 for the construction of a children's playhouse and grounds, and, the residue of the estate in trust to apply the income thereof to the maintenance and preservation of such structures and grounds forever, are valid charitable bequests, and do not violate the law against perpetuities; and it is immaterial that the testator has directed that a bronze statue of himself with his name underneath in large letters shall be placed upon the memorial, and that a mural tablet shall be placed in the playhouse with an inscription to the effect that the house was erected by testator and his wife in memory of their son.

Argued March 23, 1897.   Appeal, No. 581, Jan. T., 1896, by Benjamin F. Walker, from decree of O. C. Phila. Co., Oct. T., 1895, No. 334, dismissing exceptions to adjudication.   Before GREEN, WILLIAMS, MITCHELL DEAN and FELL, JJ.   Affirmed.

Exceptions to adjudication.

The material portions of the will were as follows:

"First.—To erect and cause to be erected in the Fairmount Park, in the city of Philadelphia, under the auspices of the Fairmount Park Art Association (provided the assent of the proper authorities be obtained therefor), a monumental memorial in accordance with the design and model therewith, prepared by James H. Windrim, architect, the same to be built under his superintendence, of a granite to be selected by said architect. For his services, I direct that he shall receive as compensation, five per cent upon the expenditure for its erection and completion, or, if he be not living, his son John T. Windrim, I next designate to be employed in like manner and in his father's stead to complete the said works in all particulars; or, if he be not living, by such architect as the said trustee may select, who will continue to complete the erection of the said monumental memorial in strict accordance with the original design. The model of said design I have approved, and the same is placed in the safe keeping of the Fidelity Insurance, Trust and Safe Deposit Company, photographs of which I have approved by my signatures thereon. The said memorial is to include equestrian statues in bronze of Major-Generals George B. McClellan and Winfield S. Hancock and colossal statues in bronze of Major-Generals George G. Meade and John F. Reynolds; the niches in the right and left wings of the design to have pedestals to receive bronze busts of the following distinguished Pennsylvanians, namely: Governor Andrew G. Curtin, Major-General John F. Hartranft, Admirals David D. Porter and John A. Dahlgren, General James A. Beaver, Major-General S. W. Crawford, and in addition thereto the Architect James H. Windrim and my executor John B. Gest. A mural tablet in bronze will be placed upon the pedestal stage of one of the main columns with the inscription. 'This Monumental Arch presented by Richard Smith, Type Founder, of Philadelphia, in memory of Pennsylvanians who took part in the Civil War, whose strife was not for aggrandizement, but when conflict ceased, the North with the South united, again to enjoy the common heritage left by the fathers of our country, resolving that thereafter all our people should dwell together in unity.'

"Upon the pedestal stage of the other main column will be placed upon a bracketted rest, on the right of the entrance

front, a statue of myself, in bronze, and underneath, the name Richard Smith, in large letters.    The central part of said memorial to be for a carriage way, and on either side passages for pedestrains.    And I direct that the entire expense of the memorial, and the erection and completion thereof, shall not exceed five hundred thousand dollars ($500,000).

"Second.—Provided, the assent of the proper authorities be obtained, to appropriate, lay out and expend the sum of fifty thousand dollars (50,000) in the erection of a proper building and enclosing a children's playground, in such portion of Fairmount Park as may be designated by the Park Commissioners, the said building to have a general hall as a play-room, and shelter with a connecting building provided with all necessary appliances for the safety and comfort of such children as may be brought there, seeking recreation, by parents, guardians or other caretakers, with chambers, with cribs and couches for them in case of sickness, and all proper nurses and attendants as may in the judgment, or with the approval of said trustee be thought to be needful.    I would prefer that male children over ten years of age be excluded from said playground and building, so that it may be safely used for the recreation of the young.    The building herein provided to be erected must contain a mural tablet in bronze with the inscription lettered thereon 'Erected by Mr. and Mrs. Richard Smith in memory of their son Stanfield Smith.'    The number of acres to be enclosed I leave to the discretion of said trustee and the said Park Commissioners.    And all the residue and remainder of my said estate I direct to be kept well invested by the said trustee, and that the income thereof shall be appropriated and paid by them, from time to time for the maintenance, repair and caretaking of the said monumental memorial and the said children's play house and ground attached thereto, and the adornment thereof, so that the same shall be constantly maintained in good order and condition : and in case the said income be more than sufficient for these purposes, then I authorize the expenditure of the surplus in the erection and maintenance of such additional buildings as in the judgment of my said trustee and the Commissioners of said Park may be deemed necessary."

The appellant who claimed to be a half brother of Mrs. Sarah A. Smith, appeared and raised the question that the gift

for the monumental arch was not a charity, and therefore the bequest to keep the same in repair and good order was void, because it violated the rule against perpetuities. The auditing judge, however, was of opinion, and so adjudicated, that the will of the testator created valid charities, and that even if they should fail by reason of the refusal of the proper authorities to permit the erection of the structures, a cy pres application should be made under the acts of assembly relating to the subject.

Exceptions to adjudication were dismissed, HANNA, P. J., filing the following opinion:

It was earnestly argued that the gifts by testator in trust, after the death of his wife, to expend a sum not exceeding $500,000 in the erection of a monumental memorial, and also the sum of $50,000 for the construction of a proper building, and inclosing a children's playground in Fairmount Park, provided the assent of the proper authorities be obtained, and of the residue of his estate to be kept well invested by the trustee, and the income therefrom appropriated from time to time for the maintenance, repair, caretaking and adornment of the monumental memorial and the children's playhouse and grounds attached; and in case the income be more than sufficient for these purposes, the surplus to be expended in the erection and maintenance of such buildings as in the judgment of the trustee and the commissioners of said park may be deemed necessary, are void, for the reason that the purposes of the trust do not constitute that which is recognized by the law as a charitable disposition of the estate. And as they contemplate an indefinite and perpetual retention, accumulation and expenditure of the income, it is a violation of the law against perpetuity, and consequently the testator must be held to have died intestate. But it is too late to suggest such a proposition. The whole current of authorities, remote as well as recent, approve and sustain such a disposition of his estate as is directed by Mr. Smith, and settles the same to be, beyond all dispute, a charitable use. It is true the gift does not provide for the hungry, naked, sick or homeless, nor for the scholastic or scientific education of the general public, but, with an equally exalted benevolence and love for mankind, has in view, by the foundation

of an almost imperishable magnificent memorial, far excelling in beauty any creation of the sculptor's art heretofore erected within the limits of the park, the pleasure resort of hundreds of thousands of our population, which for generations yet unborn will tend to the elevation and refinement of the people, cultivate a love for the beautiful in art and architecture, and keep alive their patriotism and remembrance of the martial prowess and good deeds in statesmanship and civil life, of heroes, patriots and citizens worthy of perpetuation. And not only this, but furnishes a secure place for the comfort and gratuitous healthful amusement and recreation of young children, amid pure and attractive rural surroundings, removed from the dangers of the streets and contaminated atmosphere of a great city. We cannot conceive of any more strictly charitable use within its legal definition than the purposes and objects contemplated by the testator in this disposition of his large estate. The memorial monument is for the beautifying and adornment of the city, and for these reasons alone the gift would be upheld as charitable. In England such bequests have frequently been sustained. Also those for the establishment of botanical gardens. And the British Museum was also held a public charity. In our own state, in Cresson's Appeal, 30 Pa. 437, the legacy was to the mayor and councils of Philadelphia in trust as a perpetual fund, the income to be annually forever expended in planting and renewing shade trees, and this was held to be a charitable bequest. Without referring particularly to the numerous cases, both in England and in this country, upon the subject, it will suffice to again refer to one of our own authorities—Fire Insurance Patrol v. Boyd, 120 Pa. 624, where it was held that the insurance patrol, incorporated to save life and property in and contiguous to burning buildings, being without money capital, but supported by voluntary contributions, making and dividing no profits or dividends, etc., is a public charity. Nor does the fact, as was also earnestly contended, that testator directed to be placed upon the main column of the memorial a bronze statue of himself, with his name underneath in large letters, and that the building to be erected as a general hall for a playroom and shelter for children must contain a mural tablet, with the inscription, "Erected by Mr. and Mrs. Richard Smith, in memory of their son, Stanfield Smith," detract from the chari-

table character of the bequest.   This question has also been determined, and was settled in Miller v. Porter, 53 Pa. 292, where the testator established by his will a college, to be known as "Porter University," and in Fire Insurance Patrol v. Boyd, supra, where PAXSON, J., says : " The motive of the benefactor is of no moment, and is not to be sought after, but the purpose and object of the gift determines its character as religious, charitable, or otherwise."

But in the view we take, it is scarcely necessary to consider whether the provisions made by testator are valid as charitable uses, for the reason, we think, he had full power and authority to direct the expenditure of his estate as he deemed proper, either for the erection of a monumental memorial, or children's playhouse, or both, in the park or elsewhere, and to provide for their maintenance as he considered advisable.   He left no children or other descendants who were thus deprived of their inheritance and disappointed in their expectations of enjoyment of so large a fortune.   Testator was disposing of his own money. This is a right assured to him by law, and restrained only by those enactments and principles of public policy which, for the good order and welfare of society, have been established by the legislature or the courts.   Gifts for the erection of monuments and construction of vaults or tombs in cemetery lots, and inclosing the same, and providing for their future care and adornment, together with other similar mortuary gifts, have ever been recognized, and the wishes of the donor or testator carried out by the courts.   And, to remove all doubt upon the subject, the legislature, by the Act of May 26, 1891, P. L. 119, expressly declared that no disposition of property hereafter made for the maintenance or care of any cemetery, churchyard, etc., or monument or other erections on or about the same, "shall fail by reason of such disposition having been made in perpetuity, but shall be held to be made for a charitable use."   Nor are we aware it has ever been suggested that, in the absence of any express statute, the courts will regulate the amount the testator may direct to be thus expended.   We see no reason why he may not bequeath his entire estate for such purposes.   In Bainbridge's Appeal, 97 Pa. 482, a testator directed his executor " to appropriate and use for and in the erection and construction of a suitable monument at my grave such as the amount of funds

in his hands will warrant." The executor expended for the purpose nearly the entire residuary estate, and it was held he had the right under the will, in his discretion, to expend the whole or any part in the erection of the monument, MERCUR, J., saying such was the clear intention of the testator, and "may not the testator have said to the appellant, as the good man of the house said to the laborer, 'is it not lawful for me to do what I will with mine own?' He had the right to make such a disposition of his estate. We see no cause to set at naught his will or to impair its force." If a testator has this unlimited power of disposition of his estate, and can thus perpetuate his memory in costly structures, upon which may be inscribed his name, genealogy and biography, why may he not devote his fortune to beautifying and adorning his birthplace with works of art such as memorial arches, statues, fountains, picture galleries and conservatories, or zoölogical gardens, and providing the means for the innocent and healthful diversion and recreation of the people, whether children or adults, by the construction of amusement halls, playgrounds, gymnasiums, or natatoriums. And such a catholic, broad-minded public spirit on the part of our citizens of wealth, whether men or women, should not only be commended, but encouraged, and the objects they had in view be considered as the most benevolent and beneficent public charity.

The exceptions are accordingly dismissed and adjudication confirmed.

FERGUSON, J., dissented.

*Errors assigned* were in dismissing exceptions to adjudication.

*Joseph Mellors*, for appellant.—The gift for the erection of the monument in question is not a charity in contemplation of law: Bispham's Principles of Equity, 170; Jackson v. Phillips, 14 Allen, 555; Fire Ins. Patrol v. Boyd, 120 Pa. 624; Price v. Maxwell, 28 Pa. 35; Bates v. Bates, 134 Mass. 110; Cresson's App., 30 Pa. 437; Theobold on Wills, 291; Redfield on Wills (1st ed.), 778; Lloyd v. Lloyd, 10 Eng. Law & Eq. 142; Hoare v. Osborne, L. R. 1 Eq. 585.

It is undoubtedly true that not until the act of assembly of

May 26, 1891, P. L. 119, was a bequest to keep monuments and tombs in good order and repair forever, valid. ·

Where there is a gift for two purposes, and one of the purposes is a violation of the rule against perpetuities, the gift will be bad altogether: Gray on Perpetuities, 331–368.

*John Marshall Gest*, for appellees, was not heard, but argued in his printed brief.—The bequest for the erection of the monumental memorial in Fairmount Park is a legal charity : Tudor on Char. Trusts, 2 ; Atty. Gen. v. Aspinall, 2 Myl. & C. 623 ; Goodman v. Mayor of Saltash, L. R. 7 App. Cas. 650 ; In re Christ Church Inclosure Act, 38 Ch. D. 532 ; Witman v. Lex, 17 S. & R. 88 ; Wright v. Linn, 9 Pa. 433 ; Girard Will Case, 2 Howard, (U. S.) 127 ; Howse v. Chapman, 4 Vesey, 542 ; Faversham v. Ryder, 5 DeG. M. & G. 350 ; British Museum v. White, 2 Sim. & S. 594 ; Townley v. Bedwell, 6 Vesey, 194 ; Penny v. Croul, 76 Mich. 471 ; Harrison v. Corp. of Southampton, 2 Sm. & G. 387 ; Dundee v. Morris, 3 Macqueen, 134 ; Miller v. Porter, 53 Pa. 292 ; Jones v. Habersham, 107 U. S. 174 ; President of the United States v. Drummond, 7 H. L. cit. 141.

The technical question of a public charity is eliminated by the acceptance of the bequests by the commissioners of Fairmount Park under the acts of assembly defining their powers : Act of March 26, 1867, P. L. 548 ; Act of April 14, 1868, P. L. 1088.

The final trust for the maintenance of the children's playhouse and playground and the expenditure of the surplus income upon the erection and maintenance of additional buildings is valid, even if the trust for the maintenance of the monumental memorial is invalid : Gray on Perpetuities, 331 ; Tyssen on Charitable Bequests, ch. XXV., p. 330 ; Chapman v. Brown, 6 Vesey, 404 ; Dawson v. Small, L. R. 18 Eq. 114 ; In re Williams, L. R. 5 Ch. Div. 735 ; In re Birkett, L. R. 9 Ch. Div. 576 ; In re Sinclair's Trust, L. R. 13 Ireland, 150 ; Vaughan v. Thomas, L. R. 33 Ch. Div. 187.

PER CURIAM, April 19, 1897 :

We entirely concur with the learned court below in holding that the bequests contained in the will of the testator are free

from any objections under the statute against perpetuities. The reasons for this conclusion are so well and forcibly presented in the opinion of the court that we affirm the degree upon the grounds there stated.

Decree affirmed and appeal dismissed at the cost of the appellant.