## Funck's Estate.

*Trusts and trustees—Charitable use—Burial ground—Sale.*

Where a testator devises a burial ground in which his ancestors are buried to his son " and his heirs in fee in trust and for the use of a burial ground forever," and provides a fund, the income of which is to be used in keeping the burial ground in repair, and further directs that all of his relatives shall have the privilege of burial in the burial ground free of cost, the estate acquired by the son is a fee simple, in trust for a charitable use, and not a base fee subject to a condition.

When in the course of time such a burial lot becomes surrounded with blast furnaces, cinder banks, ore roasters and quarries, and all of the bodies have been removed, the orphans' court may, under the Act of April 18, 1853, P. L. 503, order a sale of the land; but the proceeds of such sale can be devoted only to the purpose of the purchase of another place of burial to be held for the same uses.

*Trusts and trustees—Sale under the Act of April 18, 1853, P. L. 503.*

In all cases where the immunity or exemption referred to in the concluding sentence of the 1st section of the Act of April 18, 1853, P. L. 503, inheres in the title or estate itself, involving rights which would conflict with the interest decreed to be sold, and would, therefore, be impaired by the sale, the protection of the proviso may be interposed with effect; but where there is no immunity from sale intended as a protection of the estate itself, and it is but a mere want of power in the person or party who holds it, and no independent interest would suffer by the conversion, the law intended to confer the power upon the court to order a sale.

*Trusts and trustees—Sale under the act of April 18, 1853—Discretion of court.*

The appellate court will not review the discretion of the orphans' court in ordering a private sale of land under the act of April 18, 1853, to a person who agrees to pay $300, together with all the costs, counsel fees and expenses involved in procuring the decree of court and making the transfer of title, as against a person who offers to pay the sum of $500, conditioned, however, upon the court of appeal affirming the order of sale, without any offer to pay counsel fees or costs.

Argued Oct. 24, 1900. Appeal, No. 53, Oct. T., 1900, by Martin Funck, from decree of O. C. Lebanon Co., ordering sale of real estate in the estate of John Funck, deceased. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Petition of Daniel Funck, trustee, to sell land.

From the record it appeared that John Funck died in 1865, seized among other lands of a farm, situate in the township of North Lebanon, on which was located a small cemetery, twenty-two feet by forty-six feet, which had been used for burial purposes since about 1795, and on which about fourteen bodies had been interred, including the wife of John Funck, who died in 1857, and was the last one buried there.

Subsequent to the death of John Funck, his will, dated May 12, 1863, was admitted to probate and contained, inter alia, the following:

" My three farms, plantations or tracts of land, the one situate in North Lebanon township, Lebanon county . . . . I direct my hereinafter-named executors to sell at public sale during the fall next succeeding my decease, or if my executors think best they may postpone the selling of the same one year longer; the same shall be sold upon the following terms: ten per cent. cash on the day of sale or a note with security to be given for that amount, and the balance of the purchase money to be paid on the ensuing first day of April after such sale when the title shall be made after payment and the payment of the purchase money to be secured.

" It is, however, my will, and I do expressly order and direct that the burial ground, on my farm, in North Lebanon township, county aforesaid, shall be reserved from such sale, and I do hereby give and devise the same with the appurtenances to my son, Daniel Funck, and his heirs in fee in trust and for the use of a burial ground forever; and it is my will and I do order and direct that my hereinafter-named executors as soon after my death as they conveniently can, shall build a new clapboard fence around the said burial ground; and I do further order that one hundred dollars of the purchase money of my said farm in North Lebanon township shall remain charged on the same forever, and that the interest accruing thereon shall be paid yearly to my said son Daniel who shall apply the same from time to time to keep the said burial ground and fence in good order and repair, and after the death of my son Daniel some other suitable person shall be appointed by the orphans' court of Lebanon county (in the event that my surviving children cannot agree and appoint one themselves) to receive the

said interest on the one hundred dollars aforesaid, and apply the same as above provided and so on forever.

"It is my will and I do further order and direct that at any time hereafter forever all my relatives shall have the privilege to bury therein and my kindred here, free of cost, if they wish to do so."

Shortly before his death he directed that he should be buried elsewhere, and also requested that his children after his death should disinter his wife, and reinter her in the place wherein he had chosen to be buried. This was done. The fourteen other bodies interred in this burial ground were removed in 1896.

In 1896 the burial ground had become surrounded by blast furnaces, cinder banks, ore roasters and quarries. Other facts appear by the opinion of the Superior Court.

The court in an opinion by EHRGOOD, P. J., found in favor of the petitioner and entered the following decree:

And now, January 2, 1900, upon due consideration, the court award to Daniel Funck, trustee, etc., an order of private sale, authorizing and empowering him to sell and convey unto the said Lackawanna Iron & Steel Company the said tract or land and the lane approaching thereto in fee, free and discharged of any and all trust, charity or use, and divested of all right of way thereto, created by the said last will and testament of the said John Funck, deceased. The said Daniel Funck to enter into security, in the sum of $600, with two sufficient sureties, to be approved by the court, conditional for the faithful application of the proceeds of such sale, to the uses and purposes of the trust aforesaid, as may hereafter be ordered and decreed by the court. It is further ordered that the costs of this proceeding, including counsel fee for the petitioner, shall be paid by the Lackawanna Iron & Steel Company.

*Error assigned* was the decree of the court.

*Bassler Boyer*, for appellants.—This is a trust for charitable uses: Smith's Est., 181 Pa. 109; Perry on Trusts, sec. 706; Wright v. Linn, 9 Pa. 433.

A conveyance of land to trustees, for a charitable use, does not create a conditional estate, but only a trust for the charitable use, not liable to be defeated by nonuser or alienation, in the

absence of an express condition: Wright v. Linn, 9 Pa. 433; Sellers M. E. Church's Petition, 139 Pa. 61.

The contingency permitting a private sale could not arise in this case. The court could not be of opinion, with the offer in the answer before it, that a bid of $300 was a better price than a thoroughly secured offer of $500; and the court, very prudently, refrains from saying in its opinion, that $300 is a better price than $500, by saying nothing about it, and making the order to sell for the $300. This alone, if there were authority to interfere with this charitable trust, which we deny, would be sufficient error to avoid the decree and require a reversal.

*Thomas H. Capp*, for appellee.—The cy pres doctrine is one under which courts of chancery act, when a gift for charitable uses cannot be applied according to the exact intention of the donor. In such cases the courts will apply the gift, as nearly as possible (cy pres), in conformity with the presumed general intention of the donor: Perry on Trusts (3d. ed.), sec. 737; Philadelphia v. The Heirs of Stephen Girard, 45 Pa. 9; Bispham's Equity, sec. 126; Barr v. Weld, 24 Pa. 84; Brendle v. German Reformed Congregation of Jackson Twp., 33 Pa. 415; Burton's App., 57 Pa. 213.

A sale is frequently the best mode of executing the trust: Sellers M. E. Churchs' Petition, 139 Pa. 61; Mercer Home, 162 Pa. 232.

OPINION BY W. D. PORTER, J., March 19, 1901:

The will of John Funck reserved the small burial ground, $22 \times 46$ feet in size, and the narrow strip of ground leading therefrom to the lane located upon his land, out of the operation of the power to sell real estate conferred upon the executors. The express denial to the executors of the power to sell has no bearing upon the nature of the estate created by the devise of the burial ground. The burial ground was devised to "Daniel Funck, and his heirs in fee in trust and for the use of a burial ground forever." There was a direction that after the death of Daniel some other suitable person should be appointed by the orphans' court of Lebanon county as trustee, in his stead. The will contained a provision that $100 of the purchase money of the farm to be sold by the executors should

remain a charge thereon, and the interest accruing should be paid to the trustee, and by him applied to keep the burial ground and fence in good repair and order. The will contained this designation of the future beneficiaries of this trust: "It is my will and I do further order and direct that at any time hereafter forever all my relations shall have the privilege to bury their and my kindred here, free of cost, if they wish to do so." At the time of the death of the testator the remains of the dead bodies of some of his kindred and others not of his blood had been interred and remained in this lot. The body of his wife was buried there at the date of the will, but he subsequently directed his children to cause her body to be removed and buried beside his own in a cemetery, where, in accordance with his direction, he was afterwards buried. The will contained no provision for a reversion of the land to the heirs of the devisor, and no limitation of its uses other than those contained in the paragraphs above quoted. There was no reservation to said heirs of the right to enter for condition broken, or for misuser or nonuser.

The estate acquired by Daniel Funck was a fee simple, in trust for a charitable use; and not a base fee, subject to a condition: Griffitts v. Cope, 17 Pa. 96; Barr v. Weld, 24 Pa. 84; First M. E. Church of Columbia v. Old Columbia Public Ground Company, 103 Pa. 608; Jones v. Renshaw, 130 Pa. 327; Smith's Estate, 181 Pa. 109. The heirs of John Funck have no interest, direct or remote, in the property, and the standing of the appellants to question the regularity of the decree of the court below is entirely dependent upon their interests as beneficiaries under the trust: Petition of Sellers' M. E. Church, 139 Pa. 61; Mercer Home, 162 Pa. 232; Nauman v. Weidman, 182 Pa. 263; Gumbert's Appeal, 110 Pa. 496. The considerations which led the testator to make this disposition of the land are of no moment, but the purpose and object of the devise must determine its character: Fire Insurance Patrol v. Boyd, 120 Pa. 624. The purpose and object of this testator was, (1) to protect from intrusion and preserve from neglect the last resting places of those already buried in this lot; (2) to provide a place where his relations might have the privilege to bury his and their kindred, free of cost, if they wished to do so. The will of John Funck was executed in 1863, and he died in 1865. The last interment

in the burial ground, prior to his death, was in 1857, and since that time no body has been buried there; none of the proposed beneficiaries under the trust have ever sought to avail themselves of the rights thereby conferred. In 1896 the descendants of those whose graves were in the burial ground at the time the trust was created, by the will, joined in a request that the bodies be removed to an adjoining cemetery, and the owners of the land which surrounded the old burial ground caused certain lots in the cemetery to be conveyed in trust to Daniel Funck, the trustee under the will, and all the bodies were thereto removed and reinterred. Martin Funck, one of the appellants, thereupon filed a bill in equity, at No. 1, Equity Docket of 1897, in the court of common pleas of Lebanon county, praying that the remains of the dead which had been so removed from the old burial ground should be returned thereto; that the Lackawanna Iron & Steel Company should be compelled to remove certain cinder banks which rendered the old lane through the farm impassable, and that said company should be restrained from blasting stone in a quarry in the neighborhood. After a full hearing before McPHERSON, J., that learned judge held that the plaintiff was not entitled to the relief prayed for; and that adjudication was never appealed from. We must, therefore, hold that the burial ground is lawfully tenantless, after the lapse of thirty-five years from the creation of the trust. At the time of the proceeding in equity mentioned the burial ground was surrounded by a blast furnace plant; near it on one side was a deep quarry, and all around it were furnaces, ore roasters, slag dumps and cinder banks. The conclusion of Judge McPHERSON was summarized as follows: "It is hardly conceivable that any person ordinarily sane should any longer desire to bury or be buried in this ground, and accordingly the element of family association and attachment is removed from consideration." At the hearing of this present proceeding, in the court below, it was agreed that the findings of fact by Judge McPHERSON, in the equity proceeding, should be taken, under the replication, as facts so far as they were applicable and competent. Those findings of fact made it very clear that, if the purpose and object of the devise was to be considered, it was for the interest and advantage of the trust estate that the petition of the trustee for an order to sell should

be granted.   The conditions were certainly such as to present a case proper for the exercise of the discretion of the court below, if it had jurisdiction to decree a sale of the trust estate.

In invoking the jurisdiction of the court below to decree a sale, the petition was presented to the orphans' court under the terms of the Act of April 18, 1853, P. L. 503.   The petition set forth the nature and character of the trust, the changes which had resulted in transforming the farm which had surrounded the burial ground at the time of the death of John Funck into a busy blast furnace plant, with its cinder banks, ore roasters, quarries and other features not desirable in the surroundings of a place of burial for the dead.   It further set forth the removal of the bodies of those who had already been buried in the lot under the circumstances above recited. The petitioner specifically averred that the land had become unsuited for burial purposes, and that no one would ever use it for that purpose hereafter ; that it was for the best interests of all parties in interest in said premises that the same should be sold, and that the Lackawanna Iron & Steel Company had entered into an agreement with the petitioner to pay $300 for the property at private sale, and prayed the court to order said private sale to be made accordingly.   All of the heirs and next of kin of John Funck, the testator, except two, joined in the prayer of the petitioner.   The appellants filed an answer to the citation, which the court ordered to be served upon them, in which they denied the jurisdiction of the court to make the decree.

The first four assignments of error relate to the processes of reasoning by which the learned judge of the court below arrived at his conclusion, and it is not necessary that they should be considered in detail.   It is manifest that the intention of the testator was to provide for the care of the graves of those who had been interred in the ancient burial ground, as well as to provide a resting place for those whom his relatives might, under the terms of the trust, designate as the beneficiaries thereof.   It is equally clear that the proceeds of the sale of this land cannot be· devoted to any purpose save the purchase of another place of burial, to be held for the same uses.   The devise of the land was for the purposes of burial ; the devise of the fund charged upon the farm was in trust that its income should be devoted to keeping the burial ground in condition.   This record does

not indicate any purpose to relieve the farm from the charge of $100, the income of which is to be received by the trustees and applied to keeping the burial ground in order.  The petition certainly does not set forth such facts as would have warranted the court below in making a decree which would have relieved the farm from that charge.  The revenue of that fund must still be devoted to keeping the place of burial in condition.

The fifth assignment of error is a direct attack upon the jurisdiction of the orphans' court to decree a sale of the land held under the trust created by the will of John Funck.  The powers conferred by the act of 1853 are certainly ample to cover such a case. The jurisdiction to decree a sale is given whenever real estate shall be held by trustees for any public or private use or trust, " and, generally, in all cases where estates have been or shall be devised or granted in trust, or for special or limited purposes." The jurisdiction is to be exercised, "provided, that any such court in the county where the premises shall be situated shall be of opinion that it is for the interest and advantage of those interested therein that the same shall be sold, mortgaged, leased or let on ground rent, and may be done without injury or prejudice to any trust, charity or purpose for which the same shall be held."  This act was intended to unfetter estates and to facilitate the transmission of titles, whether bound around by the disabilities of persons, the limitation of contingent interests, or by restriction, to limited uses and purposes, and, at the same time, to preserve to every interest its proper share in the result. " The law being beneficent and remedial, is not to be so construed as to defeat its main intent: " Burton's Appeal, 57 Pa. 213.  The contention of the appellant is that the concluding sentence of the first section of the act, " and provided that the same may be done without the violation of any law which may confer an immunity or exemption from sale or alienation," takes the estate created by the will out of the operation of the statute. In all cases where the immunity or exemption inheres in the title or estate itself, involving rights which would conflict with the interest decreed to be sold and would, therefore, be impaired by the sale, the protection of this proviso may be interposed with effect.    But where there is no immunity from sale intended as a protection of the estate itself, and there is but a mere want of power in the person or party who holds it, and no independent

interest would suffer by the conversion, the law intended to confer the power upon the court to order a sale. There was in this case no reversionary interest to be defeated by a sale. If there was any dereliction on the part of the trustee, the remedy would be by a proceeding to compel him to perform the trust. The very object of the proposed sale is to carry out the provisions of the trust in such a manner as to more effectually accommodate the beneficiaries thereof. The conditions have so changed as to require a change of location in order that the purpose of the trust may be accomplished. This very question, arising under the proviso of the act, was fully discussed and determined against the contention of the appellants in Burton's Appeal, supra. The act can in no case be used as a cloak for the diversion of the trust estate to other uses, but conversion is not diversion. The authority conferred by the act was to order a sale of the land discharged of the trust, and decree that the fund realized from the sale should be held for the same uses. The whole title to this land was in the trustee. There were no contingent or revisionary interests to be protected by the proviso in question. The limitation " in trust for a burial ground " was not a qualification of the estate devised, but of the uses to which, in the hands of the trustee, it might be applied. In the absence of an express condition contained in the devise, there was nothing in the nature of the estate of the trustee which invested it with immunity from sale : Griffitts v. Cope, supra; Pickle v. McKissick, 21 Pa. 235; Barr v. Weld, supra; Sellers' M. E. Church's Petition, supra. In Church v. Public Ground Company, supra, Chief Justice MERCUR said : " Whatever words are relied on as creating a condition must not only be such as of themselves would create a condition, but must be so connected with the grant as to qualify or restrain it : Laberee v. Carleton, 53 Me. 211. It was said by Mr. Chief Justice BIGELOW, in Packard v. Ames, 16 Gray, 327 : ' We know of no authority by which a grant declared to be for a special purpose, without other words, can be held to be a condition. On the contrary, it has always been held that such a grant does not convey a conditional estate unless coupled with a clause for the payment of money, or the doing of some act by the grantee on which the grant is clearly made to depend.' To make the estate conditional the words must clearly show such intent : Cook v. Trimble,

9 Watts, 15." Mr. Justice MITCHELL, speaking for the court, in Nauman v. Weidman, supra, said: " The testator created a valid trust for specific charitable uses, and, as a general rule, land so held cannot be conveyed away by the trustee. . . . There are classes of cases where the object of the trust has come to an end, or conditions have so changed as to require change of location, in which courts of equity will decree sale and supervise the application of the proceeds to the same use, but in this state that power is now exercised under the act of 1853." There being no immunity from sale involved in the nature of the estate, nothing but an unequivocal direction contained in the will, that no part of the land should be parted with, for any purpose whatever, ought to be held sufficient to restrain the trustee, under the direction of the court, from doing that which the interest of the charity require : Mercer Home, supra.

The orphans' court had jurisdiction to decree a sale, and the act vested it with a discretion to determine whether that sale should be public or private. In the absence of an abuse of that discretion the decree will not be reversed, because the appellate court may incline to the opinion that a better price could have been obtained by making the sale in some other way. In the present case the party to whom the court decreed the land to be sold, at private sale, had offered to pay $300, together with all the costs, counsel fees and expenses involved in procuring the decree of court and making the transfer of title. The appellants, while denying the jurisdiction of the court to decree the sale, made an offer that, if the court should find that it had jurisdiction and that the property should be sold at private sale, they would, upon certain conditions, pay the sum of $500 for the land. The condition was that they would pay, " if the courts of appeal affirm the decree making such order of authority to sell. " This offer, if accepted, would have placed upon the estate the costs in the court below and all counsel fees involved in making the proposed sale. The offer made it clear that the estate would have to pay counsel fees in the appellate court. The money was not to be paid until the order of court was affirmed upon appeal. Had the court decreed such a sale, the trustee. would not have been in any position to appeal, for the order for which he prayed would have been granted. Under the terms of the offer those who made it did not bind themselves

to appeal; had they failed to do so, then, under the literal terms of their offer, the purchase money never would have become due.     In determining whether the acceptance of this vague offer would be more advantageous to the trust estate, than to decree the sale as prayed for, the orphans' court was acting within its discretion: Brown's Appeal, 68 Pa. 53.     The learned judge of the court below decreed the sale which assured to the trust estate a definite sum of money, without any deductions.     We are not satisfied that this involved any abuse of discretion.     The order of the orphans' court is affirmed, and the appeal dismissed at costs of the appellants.