## Congregation Shaarai Shomayim *v*. Moss, Appellant.

*Cemeteries—Cemetery lots—Church congregation—Exclusive right of burial.*

In 1747, a landowner conveyed by deed a tract of land to two individuals, their heirs and assigns, "forever in trust for the society of Jews settled in and about Lancaster to have and use the same as a burying ground." At the time of the conveyance there was a society of Jews in Lancaster which held religious services in the house of one of the trustees named in the deed, and which regularly continued its organization until 1856, when it became duly incorporated. After that date the incorporated congregation assumed exclusive ownership of the cemetery and expended large sums of money upon it. The congregation entered into an agreement in writing to convey to a purchaser an exclusive license to bury his dead in a particular lot. The purchaser subsequently declined to accept a deed on the ground that the corporation could not give good title. *Held* (1) that the estate which passed under the deed of 1747 was a fee simple, not a base fee, subject to a condition, and that the heirs of the grantor had no interest direct or remote in the property; (2) that the limitation " in trust to have and use as a burying ground," was not a qualification of the estate granted, but of the uses to which in the hands of the cestui que trust the land might be applied; (3) that the beneficial interest passing under the grant did not vest in all members of the Hebrew race without regard to their place of domicile, nor did it vest in the individual members of that race who resided about Lancaster, but that it did vest first in the unin-

corporated congregation and afterwards in the incorporated congregation ; (4) that the use of the medium of trustees was a matter of form, and did not make this a case of a charitable use; (5) that the corporation was vested with a discretion as to the manner of carrying into execution the purpose for which the land was held; (6) that the corporation had a right to enter into an agreement to grant an exclusive license of burial in particular lots, and that the purchaser was bound to accept the deed tendered to him.

Submitted Nov. 10, 1902. Appeal, No. 183, Oct. T., 1902, by defendant, from judgment of C. P. Lancaster Co., May T., 1902, No. 59, on case stated in suit on Congregation Shaarai Shomayim v. S. R. Moss. Before BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Case stated to determine title to land.

The case stated was as follows :

And now, May 7, 1902, it is hereby agreed by and between the parties, plaintiff and defendant above mentioned, that the following case be stated for the opinion of the court in the nature of a special verdict :

1. That on February 3, 1747, Thomas Cookson and Margaret, his wife, conveyed to Isaac Nunez Ricus and Joseph Simons, their heirs and assigns, a certain piece of ground situate in the township of Lancaster, county of Lancaster and state of Pennsylvania, containing half an acre " forever in trust for the society of Jews, settled in and about Lancaster to have and to hold the same as a burying ground." Said deed is recorded in the office for the recording of deeds in and for Lancaster county in record book B, page 441.

2. That previous to that time religious services were held by the society of Jews in Lancaster, in the house of Joseph Simons, and that thereafter up to 1856 services were held at various places, but no incorporated congregation existed.

3. That the said Isaac Nunez Ricus died on a date unknown and the said Joseph Simons died on January 24, 1804, at the age of ninety-two years, leaving a will recorded in will book H, vol. 1, page 446.

4. That none of the heirs of the said Isaac Nunez Ricus or of Joseph Simons ever acted as trustees under said deed, nor were any trustees ever appointed by the court.

5. That the society of Jews in and about Lancaster, on No-

vember 18, 1856, were by the court of common pleas of Lancaster county incorporated into a congregation under the name of Shaarai Shomayim. Said charter is recorded in the office for the recording of deeds in record book N, vol. 8, page 340.

5*a*. That there was no other society of Jews incorporated or in existence at the time of the incorporation of Congregation Shaarai Shomayin.

6. That said charter was subsequently on August 25, 1879, amended by the court of common pleas of Lancaster county, which said amendment is recorded in the office for the recording of deeds in and for Lancaster county in vol. 1, page 123, and further amended March 20, 1888, and recorded in vol. 1, page 385.

7. That said society of Jews prior to the year 1856, took and had and since the incorporation of said society, said Congregation Shaarai Shomayim, has taken and had entire management and control and exercised exclusive ownership and possession of said burial ground described in the above mentioned deed, has fenced and enclosed the same, and expended large sums of money in its care and maintenance and has sold and continues to sell lots and graves in said cemetery for the purpose of raising the necessary funds for its care and maintenance.

8. That none of the heirs of Isaac Nunez Ricus or Joseph Simons have since said incorporation made any claim whatever to said burial ground, nor is it known that any of the heirs of said original grantees and trustees are yet surviving.

9. That the said Congregation Shaarai Shomayim has placed the active care and control of said burial ground or cemetery in the trustees of said congregation, who are E. M. Cohn, Jacob Selig, Adolph Gansman, Albert Rosenstein, Morris Rosenthal, M. B. Hirsh and Jonas Fox, and has adopted by-laws in reference to the use and management of said cemetery.

10. That said Congregation Shaarai Shomayim, on January 4, 1902, agreed to grant, bargain, sell and convey to S. R. Moss, the defendant, the exclusive use, occupation and possession of lot No. 25, in the general plan of said cemetery, in fee for burial purposes only, subject to the by-laws and regulations adopted by said congregation.

11. That on March 6, 1902, said congregation tendered the said S. R. Moss a deed for the said lot No. 25.

12. That said S. R. Moss refused to accept and pay for said deed on the ground that said congregation had no title to said cemetery and lot No. 25 therein, so agreed to be conveyed as aforesaid; that it could not pass such exclusive use, possession and occupation to him, the said S. R. Moss, that said cemetery, having been conveyed "in trust for the society of Jews in and about Lancaster as a burying ground," any Jew resident in and about Lancaster, whether a member of said Congregation Shaarai Shomayim or not, has a right to burial in said cemetery, free of expense, and that said congregation has no right and authority to sell to anyone exclusive use, possession and occupation of any part or portion thereof. If the court be of the opinion that the said Congregation Shaarai Shomayin possesses the right to grant and convey to the members of the Jewish religion the exclusive use, occupation and possession, for the purpose of burial, of lots in said cemetery or burial ground, as aforesaid, and can convey title to the same, subject to the regulations and by-laws of said congregation, then judgment to be entered in favor of the plaintiff for $50.00.

But if the court be not of that opinion, then judgment to be entered for the defendant. Costs to follow the judgment, either party reserving the right to sue out a writ of error therein.

The court entered judgment for plaintiff on the case stated.

*Error assigned* was in entering judgment for plaintiff on the case stated.

*Coyle & Keller*, for appellant.

*Geisenberger & Rosenthal*, for appellee.

OPINION BY W. D. PORTER, J., March 12, 1903:

The cemetery lot in question was part of a tract of land which was, by deed dated February 3, 1747, conveyed by Thomas Cookson and wife to Isaac Nunez Rickus and Joseph Simons, their heirs and assigns, "forever in trust for the Society of Jews, settled in and about Lancaster, to have and use the same as a burying ground." The consideration mentioned in the deed was the sum of six pounds, and the presumption is that the land was sold and conveyed for its full value. The

estate which passed under this grant was a fee simple, not a base fee, subject to a condition, and the heirs of the grantor have no interest direct or remote in the property : Griffitts v. Cope, 17 Pa. 96 ; Barr v. Weld, 24 Pa. 84 ; First M. E. Church of Columbia v. Old Columbia Public Ground Company, 103 Pa. 608 ; Jones v. Renshaw, 130 Pa. 327 ; Smith's Estate, 181 Pa. 109 ; Funck's Estate, 16 Pa. Superior Ct. 434.   The limitation "in trust to have and use as a burying ground" was not a qualification of the estate granted, but of the uses to which, in the hands of the cestui que trust, the land might be applied.   The beneficial interest passing under this grant did not vest in all members of the Hebrew race, without regard to their place of domicil, nor did it vest in the individual members of that race who resided about Lancaster.   The cestui qui trust was designated as " the Society of Jews, settled in and about Lancaster."   This clearly indicates a religious society, organized for the purposes of their faith, and, if such a society existed, the title vested in the association and not in its individual members.   The terms of the case stated preclude the possibility of there having been any latent ambiguity as to the identity of the cestui que trust.   There was at the date of this grant a society of Jews in Lancaster, which then held religious services in the house of Joseph Simons, one of the trustees named in the deed, and which regularly continued its organization, worshiping in various places, until 1856, when it became duly incorporated, under the name of the plaintiff congregation. The land in question had been, prior to 1856, in the exclusive possession, management and control of the society mentioned, and since that date the incorporated congregation has exercised all the functions of exclusive ownership, and expended large sums of money in care and maintenance of the cemetery.   There can be no doubt as to the identity of the beneficiary, and it is equally clear that this incorporated congregation has succeeded to all the rights possessed by the original unincorporated religious society.   At the time of the grant religious societies were, by the act of 1731, authorized to hold land for purposes of a burial ground, and therefore the conveyance to the trustees constituted an executed legal estate in the congregation itself.   The use of the medium of trustees was a matter of form, and did not make this a case of a charitable use.

"Such trustees, seldom, if ever, convey to successors; but the title in their name is treated as the title of the congregation, to be used by the congregation at their discretion, but for such purposes as the law allows:" Brendle v. The German Reformed Congregation, 33 Pa. 415; Chambers v. Calhoun, 18 Pa. 13. The society could legitimately hold this land "as a burying ground," and the efficacy of the limitation upon the use embodied in the deed amounted to nothing, except to show that the land was held for a purpose for which the congregation was by law permitted to hold: Griffitts v. Cope, supra; Kerlin v. Campbell, 15 Pa. 500; Fernstler v. Seibert, 114 Pa. 196; Appeal of Gumbert, 110 Pa. 496. The title to the land having become vested in the corporation, that body was vested with a discretion as to the manner of carrying into execution the purpose for which the land was held. No individual member of the congregation acquired a right to be buried in that ground save under such regulations as the congregation might reasonably impose: Craig v. First Presbyterian Church, 88 Pa. 42. The congregation had the power to impose such charges for burial rights as would insure the maintenance of the cemetery in proper condition, and to make such regulations, with regard to burial rights and family allotments as would tend to prevent unseemly contention. When such regulations were adopted by the congregation, the rights of all being made dependent upon the same conditions, all the members of the congregation were bound by them. The agreement between the defendant and the representatives of the plaintiff, and the deed tendered in accordance with the provisions thereof, did not constitute a diversion of the trust property nor even a conversion of the particular land to other uses. The agreement and deed to the defendant were made under the authority of the by-laws of the congregation. The deed to the defendant, while all that he has a right under his agreement to demand, conveys nothing more than an exclusive license to bury his dead in that particular lot. That license is to be exercised "under and subject to the provisions of the charter of incorporation of the congregation Shaaria Shomayim, and of the by-laws, rules and regulations under the same, as they now exist and may be hereafter enacted and created." This use of the land is within the limitation fixed by the deed under which the society origi-

nally took title. We are of opinion that this congregation has the exclusive right to control this land for purposes of burial. They had the power to enter into the contract with this defendant upon which this action is based, and the deed which they have tendered would vest in him all that he has a right to demand under his agreement.

The judgment is affirmed.