## Ellis's Estate.

*Owen J. Roberts* and *I. Hazleton Mirkil*, for Commonwealth Title Insurance and Trust Co., Accountant,

*John S. Bradway, amicus curiæ.*

*Charles E. Fox* and *Jerome J. Rothschild*, for *amicus curiæ*, contra.

*George Wharton Pepper*, for intervenors, contra.

THOMPSON, J., Auditing Judge.—On April 1, 1927, this court made the following decree:

"As a majority of the court are of the opinion that the Act of April 26, 1855, P. L. 328, and the amendments and supplements thereto, apply to the instant trust, in view of this fact, the adjudication is recommitted to the Auditing Judge (he assenting) in order that the trustee may have further opportunity of being heard as to what disposition should be made of the *corpus* and accumulated income." [Ellis's Estate, 8 D. & C. 775, 790.]

1. As the Auditing Judge, Henderson, J., was indisposed, the matter was transferred to me with his consent.

214

2. Hearings were had before me on March 27, 1929, and Feb. 25, 1929. The transcript of the stenographer's notes of testimony of said hearings are annexed hereto and made part hereof.

3. At the first hearing, a question arose as to the eligibility of those on the list awaiting admission to Ellis College. The list contained 103. After some testimony was taken with respect thereto, I referred said list to John S. Bradway, Esq., who had heretofore been appointed amicus curiæ of this court in this matter for investigation and report, and instructed him to go to the various homes of the persons on the list, in company with Miss Wetherill, the social worker employed by the trustee, with the result that he made a report which is annexed hereto; the result of which is that, while some of the persons on the list might have been ineligible, yet I find as a fact at least sixty eligibles, which is the number the trustee desires to accommodate.

4. John T. Windrim, the architect employed by the trustee, on pages 20 to 22 of the testimony, gives the estimated cost of the additions to the existing plant which the trustee desires to make as follows:

$370,000 to build and furnish four additional cottages; $45,625 president's house; $100,000 barn, garage and infirmary; $621,256 administration building; total, $1,136,881; and $100,000 for each of two wings not to be done at present.

5. From the testimony of Arthur B. Huey, Esq., and the prior testimony taken in this case, it appears that Ellis College has at present buildings and equipment sufficient for sixty girls, who are now in said college.

6. The present plan of the trustee is to spend the amounts above set forth to add to existing buildings and equipment so as to take care of sixty additional girls, making, when they are added, a total of 120 girls to be educated in said college.

7. It appears from the account that a large portion of this estate is invested in what are known as the underlying securities of Philadelphia's trolley transportation system, which has undergone somewhat of a shrinkage in value; and, in making an order in respect to estimated future income in this estate, care should be taken to allow for a possible shrinkage in income due to the above fact.

8. The bond expert of the Provident Trust Company, succeeding trustee in this estate, has submitted a statement showing the shrinkage in value of the underlying securities above mentioned, calculated on the basis of the difference between the book or inventory value and the securities capitalized on a 7 per cent. basis, which is the basis upon which at the moment there is some discussion as to whether the City will take them over or not, which matter is at present undetermined; and I will annex the expert's statement for information only.

9. My attention has been called to Bill No. 359 of the file of the House of Representatives, Session of 1929, purporting to increase the amounts charitable trusts can receive per year to $350,000. I am informed that this bill was signed by the Governor on March 13, 1929, but I am not able at the moment to secure a copy of this act as signed by the Governor.

10. My attention has also been called to Bill No. 346 of the file of the House of Representatives, Session of 1929; and I have no information as to whether this bill is in the hands of the Governor or not. So, in respect to both of said bills, I make no comment or order based thereon, but cite them for matter of information only.

11. I find as a fact from the testimony that the present trust yields about $170,000 per year, calculated as of March 27, 1928.

12. There has been submitted to me the second supplemental account to the second account of the Commonwealth Title and Trust Company, surviving trustee in this estate, verified March 26, 1928, which shows a balance of principal of personal estate of $4,204,203.25, and income of $2,328,378.18.

13. From the above, it will appear that the trustee has complied with the order of court above set forth, and shown what their plan is as to how they intend to spend the accumulated income on hand at present.

14. The court has found that the Act of April 26, 1855, P. L. 328, and the subsequent acts, apply in the present case: Ellis's Estate, 8 D. & C. 775. These acts provide that if the amount of income received is in excess of "the annual value limited by law," "it shall be the duty of any court having equity jurisdiction in the proper county, . . . by its decree to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law and equity: . . ." Act of May 9, 1889, P. L. 173;⁕ Kortright's Estate (No. 2), 237 Pa. 143, 147.

15. To my mind, the only question is, are the trusts under the Ellis will legal and capable of being carried out, irrespective of the expense of so doing?

16. The Commonwealth Title Insurance and Trust Company, surviving trustee under the will of the testator, has merged with the Provident Trust Company of Philadelphia.

17. In my judgment, the plan of the trustee as to spending the accumulated income to the extent above set forth for enlarging the present facilities of Ellis College is a proper one and in accordance with the terms and conditions of the will of the testator, and I direct that the trustee carry out the plain terms of the will.

In Johnson's Estate, 30 Dist. R. 387, where the late John G. Johnson devised his residence on Broad Street, in the City of Philadelphia, and directed that his "art property" be exhibited therein and maintained as a "public museum," liberally providing for the expense thereof, and further providing that his "art objects" should not be removed for permanent exhibition to any other place, an application was made to the court to sell the Broad Street property and remove the "art objects" to another place. We refused the application, saying (page 389) : "Where a testator so clearly provides that his property shall be used in a particular way, his will should be carried out and his charitable purpose maintained in the way directed by him: Smith's Estate, 181 Pa. 109; Derbyshire's Estate, 239 Pa. 389. If testators are given to understand in future that their purposes, the same not being in violation of law or public policy, are to be set aside because the administrators of the charity think that something else is better, charitable and public bequests of this character will certainly diminish in number and importance." No appeal was taken from our refusal.

And in Stoffel's Estate, 295 Pa. 248, the court said: "One possessed of testamentary capacity, who makes a will in Pennsylvania, may die with the justifiable conviction that the courts will see to it that his dispositions, legally made, are not departed from by those charged with the duty of performance, or improperly defeated by agreement between those upon whom he bestowed his bounty. The law will not permit that to be accomplished by indirection which cannot be done directly; hence, a will contest, which judicial investigation shows to be entirely without supporting evidence of the kind required by our law, cannot properly be accepted as a legal basis for a compromise agreement disposing of an estate in a manner materially different from that intended by the decedent, and which would in effect defeat his chief testamentary direction."

18. The principal and accumulated income as shown in the second supplemental account to the second account of the Commonwealth Title Insurance and Trust Company, surviving trustee, is directed to be retained by the Provident Trust Company of Philadelphia, succeeding trustee to the Commonwealth Title Insurance and Trust Company, and used by the said succeeding trustee in carrying out the uses, purposes and trusts set forth in the will of the testator in the manner outlined by the plan of the succeeding trustee as above set forth.

As will appear by reference to the letter of William A. Schnader, Deputy Attorney-General of the Commonwealth of Pennsylvania, annexed hereto, the Commonwealth of Pennsylvania is satisfied with any order which the court may make in the premises.